[No. 3584.     Decided June 25, 1901.]

ADA Y. INGRAM et al., Appellants, v. GOLDEN TUNNEL MINING COMPANY et al., Respondents.

TRIAL — ADMISSION OF IMMATERIAL EVIDENCE — HARMLESS ERROR.

Error of the court in admitting evidence is harmless, in an equitable cause which is triable de novo on appeal, unless it can be shown that the judgment is founded upon immaterial evidence and findings based thereon, or that appellant has been subjected to onerous and unnecessary costs by reason thereof, and that he has been refused relief by the trial court.

FORFEITURE — WHO MAY DECLARE — CONTRACT TO CONVEY.

Where a contract for the sale of a group of mining claims is executed by two of the three owners thereof, agreeing to execute a deed for the whole interest and deposit the same in escrow until the completion of payment of all installments of the purchase price, and placing the purchasers immediately in possession with the right to work the claims, the deposit by the purchasers of the first installment of purchase price, with instructions not to pay same over until a deed executed by all the owners should be placed in escrow with the holder of the money, would not give the two parties who contracted to sell the claims the right to declare a forfeiture of the contract, so far as the same related to their interests in the claims.

SAME — ENFORCEMENT — PERFORMANCE BY PARTY ASKING.

A forfeiture cannot be enforced by one party to a contract, until he shows that he has performed all of the conditions therein to be performed on his part.

Appeal from Superior Court, King County.—Hon. WILLIAM HICKMAN MOORE, Judge. Affirmed.

Ballinger, Ronald & Battle and A. W. Frater, for appellants.

Milo A. Root and Piles, Donworth & Howe, for respondents.

The opinion of the court was delivered by

FULLERTON, J.—On August 6, 1898, the appellant C. J. Ingram, together with Henry Olsen and John Anderson, were the locators and in possession of certain mining claims situated in King county, Washington, holding the same in the following proportions: Ingram an undivided three-eighths, Olsen an undivided three-eighths, and Anderson an undivided one-fourth. Olsen was at that time in the Alaskan territory. On that day, Ingram, representing his own interests and purporting to represent the interests of Olsen, together with Anderson, entered into a written contract with the respondents Gardner and Hagar for the sale to them of the mining properties. The contract, as at first executed, was as follows:

"For and in consideration of the sum of one dollar in hand paid, the receipt of which is hereby acknowledged, and the further consideration hereinafter mentioned, we, C. J. Ingram, Jno. Anderson and Henry Olsen, the owners and proprietors of a group of mining claims known and described as follows, to-wit: Golden Tunnel, Empress, Emmett, Beaver, Stella and Blue Ribbon, and Ruby, situated in King county, state of Washington, on or near Eagle or Roaring creek, about five miles south of Salmon Siding on the Great Northern R. R., herein sell said above

described mining claims to George T. Gardner and A. W. Hagar upon the following terms, to-wit: Said George T. Gardner and A. W. Hagar to pay to said C. J. Ingram, Jno. Anderson and Henry Olsen the sum of five thousand dollars ($5,000), five hundred dollars ($500) on or before the sixth day of October, 1898, five hundred dollars ($500) on or before the sixth day of December, 1898, one thousand dollars ($1,000) on or before the fifteenth day of August, 1899, and three thousand dollars ($3,000) on the first day of December, 1899. The said George T. Gardner and A. W. Hagar to have full possession of said mining property from and after the date hereof for the purpose of mining and shipping any and all ore they may take from said mine as well as the ore already on the dump. Said C. J. Ingram, Jno. Anderson and Henry Olsen agree to execute forthwith a deed to said mining property herein described to Geo. T. Gardner and A. W. Hagar, and deposit in escrow with the Washington National Bank of the city of Seattle, to be delivered to Geo. T. Gardner and A. W. Hagar on receipt of the full payment of five thousand dollars ($5,000) on or before the time herein stated.

In testimony whereof, witness our hands this the sixth day of August, 1898.

C. J. INGRAM,
JOHN ANDERSON,
HENRY OLSEN, by C. J. Ingram,
Attorney in Fact."

After the contract was signed, it was delivered to Hagar, who, with a third person and Anderson, went to the mining properties for the purpose of having Anderson point out their exact locations and boundaries. Ingram at that time was living at Skykomish, and when Hagar returned from the mining properties he passed through that place. Ingram met him at the depot, and stated to him that the fact that he had signed Olsen's name to the contract had bothered him a good deal, and that he wanted it taken off. After some talk between them, Hagar erased Olsen's name from the contract in the presence of Ingram. On the day

the first payment named in the contract fell due, Ingram and Anderson forwarded to an agent of the Great Northern Express Company at Seattle a deed executed by them, purporting to convey the properties described in the contract to Gardner and Hagar, with instructions to deliver the same to the Washington National Bank on the payment of five-eighths of the amount of the payment then due, being the proportion coming to Anderson and himself, and the deposit of three-eighths of the amount to the credit of Olsen.   The agent presented the deed to the bank twice on that day and demanded payment according to the instructions given him in the letter.   No money had been deposited with the bank by Hagar and Gardner at the times the presentations were made and payment was refused.   Subsequently, on the same day, Hagar and Gardner deposited the sum of five hundred dollars in the bank, with a letter of instructions authorizing the bank to pay it over when the other parties to the contract deposited a deed conveying the mining properties to them executed by Ingram, Anderson, and Olsen.   The next day the agent of the express company again presented the deed and demanded payment in accordance with his original instructions.   This was refused by the bank for want of authority, and the deed was returned by the agent to Ingram.   At no time was a deed executed by either Ingram, Anderson, or Olsen conveying the property, or the undivided interest of either of them therein, to Gardner and Hagar, deposited with the Washington National Bank in escrow.   Four days later Ingram and Anderson served a writing upon Gardner and Hagar notifying them that they had forfeited all right in and to the mining properties, and forbidding them to go upon the property, or from further interfering with any of the ore on the dump taken from the mines.

Gardner and Hagar entered into possession of the min-

ing claims immediately upon the execution of the contract, and between that time and the time the first payment fell due expended in betterments upon the property some five thousand dollars. They subsequently conveyed their interests to the respondent the Golden Tunnel Mining Company, which took possession, and has remained in possession since that time, expending thereon in betterments some fifteen thousand dollars. Subsequent to the notice given by Ingram and Anderson, the respondents settled with Anderson to his satisfaction, and separately negotiated with and purchased the interests of Olsen. They have also kept on deposit with the Washington National Bank the proportionate share of the original purchase price coming to Ingram, with instructions that it be paid to him on his executing and delivering to the bank a deed conveying his undivided three-eighths interest in the property to Gardner and Hagar. At the time of the execution of the original contract Ingram was a married man, his then wife being his co-plaintiff in this action. A divorce was subsequently had between them, the decree for which awarded to the wife one-half of the interest Ingram then held in the mining properties. They sued jointly for a recovery of the original interest, and for an accounting. The trial court found as conclusions of law:

(1)    "That the plaintiffs, C. J. Ingram and Ada Y. Ingram, are entitled to a judgment against the said Gardner and Hagar for a sum equal to three-eighths of five hundred dollars ($500), together with interest thereon at the legal rate from the 6th day of October, 1898, to the 1st day of May, 1899; for the further sum of three-eighths of five hundred dollars ($500), together with the legal interest thereon from the 6th day of December, 1898, to the 1st day of May, 1899; for the further sum of three-eighths of one thousand dollars ($1,000), and for the further sum of three-eighths of three thousand dollars ($3,000), and to a decree establishing a vendor's lien upon an undi-

vided three-eighths of said property for the sums above mentioned, to secure the payment thereof.

(2) "That the defendant the Golden Tunnel Mining Company and Gardner and Hagar are entitled to a decree directing and requiring the plaintiff in this action, upon the payment of said sums aforesaid, to execute a good and sufficient deed to all their right, title, and interest in and to the properties described in paragraph 1 of the findings of fact herein."

A decree was entered accordingly.

The appellants assign error upon the rulings of the trial court in the admission of certain evidence, and in making findings of fact thereon, claiming that such evidence and findings are wholly immaterial to any issue in the cause. Conceding that the record does show error in this respect, it avails the appellants nothing, unless they are able to show further that they are in some way prejudiced by it. The action is one of equitable cognizance, which this court tries *de novo* upon the record. By the statute, as well as by its constitutional powers, this court is authorized in cases of this character to affirm, modify, or reverse the judgment appealed from; and it may, if it reverses the judgment, remand the cause for a new trial, or for some further proceeding, or it may direct the proper judgment to be entered. In trying the cause *de novo* this court will, of course, disregard immaterial evidence; but it will not reverse a case and remand it for a new trial because such evidence appears in the record, where the clear preponderance of the material evidence supports the judgment of the court; and much less will it in such a case direct a judgment for the other side. To make an error of this character available, the appellant must show that the judgment is founded upon immaterial evidence and findings based thereon, or that he has been subjected to onerous and unnecessary costs because of the admission of such

evidence, and that he has applied to and has been refused relief by the trial court. Neither of these contentions are made in the present case, and we do not feel called upon to follow the appellants into a discussion of the admissibility or non-admissibility of the evidence complained of.

The principal contention of the appellants is that the respondents Gardner and Hagar subjected the rights they acquired in the mining properties by the contract of sale to forfeiture at the option of either Ingram or Anderson by depositing the first installment of the purchase price subject to the condition that it be paid over only when a deed executed by Ingram, Anderson, and Olsen to Gardner and Hagar should be deposited in escrow with the bank, and that such forfeiture became absolute when Ingram and Anderson notified them that they would not accept the conditions. It is argued that the contract itself only purports to affect the interests of Ingram and Anderson, that the negotiations between the parties appearing in the evidence shows that it was not the intention of either Ingram or Anderson to convey or procure the conveyance of Olsen's interest, and that Gardner and Hagar understood that only the interests of Ingram and Anderson were included in the contract of sale. We cannot agree with the appellants either in their construction of the contract or their interpretation of the evidence. The contract, as originally executed, purported to sell the entire interests for a definite and fixed price, payable in installments of specific sums, without regard to the several individual interests, and was signed in an apparently legal manner by all of the parties. True, Ingram afterwards caused Olsen's name to be erased; but this, it would seem from his own statements, was not because he thought there was any lack of power on his part to bargain away Olsen's interest, but was rather because he thought he had com-

mitted some criminal offense by signing Olsen's name to a writing without written authority so to do. His subsequent conduct also shows that he expected to procure Olsen's signature to a deed. In the letter of instructions to the express agent, which was prepared by him, the requirement that Olsen's share of the purchase price be deposited in the bank, was explained as follows: "This is necessary on account of our being unable to get Olsen's signature to the deed, which Messrs. Gardner and Hagar understand," showing that it was then his understanding that it was the duty of himself and Anderson to procure a conveyance from Olsen, and not the duty of Gardner and Hagar. Anderson also testifies that this was the understanding of the parties. The trial judge, it is true, caused it to be specially entered in the record that Anderson's testimony was unsatisfactory, and that he would not believe him where he was uncorroborated; yet, taken in connection with the actions and admissions of Ingram and the testimony on the part of the plaintiffs, we cannot say that the court's conclusion that there was no forfeiture on the part of Gardner and Hagar of the terms of the contract is not supported by a preponderance of the evidence.

But, if we accept the appellant's theory, and treat the contract as an agreement to convey the interests of Ingram and Anderson only, no forfeiture could have been declared at the time it was attempted by Ingram and Anderson. By the terms of the agreement they were obligated to execute and deposit in escrow with the Washington National Bank of Seattle a deed conveying the properties to Gardner and Hagar. This they had not done at that time, nor have they since done so. Furthermore, in tendering the deed to the bank they attached to its delivery the condition that Olsen's share of the purchase price be deposited with the bank. The first was a condition precedent, to be performed

by them before they were entitled to any installment of the
purchase price; and the second was the attempt to exact a
condition the contract, if their version of it be the correct
one, did not authorize them to exact. Before a forfeiture
can be enforced by one party to a contract, he must show
that he has performed all of the conditions of the contract
on his part to be performed. He cannot complain of the
other party so long as he himself is in default. Counsel
for the appellants in their brief say that these are circum-
stances wholly trivial, that a substantial compliance is all
that is required, and that the sellers did substantially com-
ply. But counsel seemingly overlook the fact that they
are asking the court to deprive the respondents of the
advantages accruing to them by virtue of the terms of the
contract, not because they have not performed its terms,
but because they did not perform in time. Forfeitures are
never favored, and under the rules of the common law a
forfeiture would not be declared unless the complaining
party was able to show that he had performed his part of
the contract strictly, and somewhat trivial omissions were
seized upon to escape the necessity of declaring a forfeiture
when to do so would result in a gross injustice to the other
party. However, we cannot think the omissions to comply
with the terms of the contract in this case were so trivial
as counsel would have us believe. There are many reasons,
not necessary to recite, but which readily occur to the
mind, why the purchasers would wish the deed deposited
before the money was paid over; and the requirement that
Olsen's share of the money be deposited was a wholly
gratuitous exaction, entirely foreign to any right which the
appellants could claim in view of the contract they are now
seeking to enforce, and one which would deprive the
respondents of the use of a large sum of money without
even the semblance of benefit to them. From any view of

the case, neither Ingram nor Anderson were entitled to declare a forfeiture of the contract at the time they attempted to declare it.

The judgment of the trial court was, therefore, as favorable to the appellants as they had the right to demand, and the judgment of this court is that it stand affirmed.

REAVIS, C. J., and DUNBAR and ANDERS, JJ., concur.