[No. 22201. Department Two. February 13, 1930.]

INCOME PROPERTIES INVESTMENT CORPORATION *et al., Respondents,* v. DANIEL B. TREFETHEN *et al., Appellants.*[1]

[1]Reported in 284 Pac. 782.

494

*Allen & Walthew* and *Riddell, Brackett & Fowler,* for appellants.

*Roberts, Skeel & Holman* and *Allen, Froude, Hilen & Askren,* for respondents.

HOLCOMB, J.—This case is here chiefly on questions of law devolving upon whether the lower court drew

the proper conclusions of law from the facts found by it. Appellants complain that certain conclusions of law are erroneous upon the facts found and embodied the errors in its decree.

On May 10, 1928, appellants leased to respondent's assignor the premises in Seattle known as the Westlake Public Market for a term of four years. Paragraph three of the lease reads: .

"The lessee accepts said premises with their appurtenances and fixtures in their present condition and at the end of the term, or sooner termination of this lease, will surrender said premises in as good order and condition as when received, reasonable wear and tear, damage from the elements, fire, acts of God or other casualty excepted. It is understood, however, that if, during the term of this lease, should any structural changes be necessary, or any repairs to the roof, floors, exterior walls or foundation, the lessors shall be under obligation to make the same. It is further agreed that lessors shall make any changes, alterations or reconstruction which may be necessary to put said building in convenient condition to use, should any portion of the leased premises be taken down or be required to be moved by reason of any condemnation or eminent domain proceedings heretofore or hereafter carried on by the city of 'Seattle, or any other governmental authority, it being the duty of the lessors in such case at their own expense to make the building conform to the property as it may remain after the said condemnation proceedings. . . ."

Paragraph seventeen of the lease provides:

"If the lessee shall fail to pay the rent at the time or in the manner herein provided or shall fail to perform any of the other covenants, terms or conditions of this lease, lessors may at their option upon thirty (30) days' written notice to the lessee, terminate this lease, and may enter into and upon the demised premises or any part thereof, either with or without statutory or other notice of process of law; and in such event all right of the lessee to have the deposit paid for

the consideration of this lease applied upon the rental, shall cease and determine . . ."

About a month after the lessee went into possession, it demanded that appellants make certain repairs. Lessors made a part of the repairs, but failed to comply with the demands of the lessee in respect to the remainder thereof. The lessee paid the rent to December 10, 1928, and on about November 6, 1928, commenced this action demanding in its original complaint a money judgment for damages for breach of the covenant to· repair. On December 18, 1928, the lessee notified the lessors that it would pay no further rent, but would offset the same against damages accruing through want of repair.

On January 9, 1929, the lessors gave notice in writing, pursuant to the provisions of paragraph seventeen of its lease, that thirty days thereafter·it would forfeit and cancel the lease for non-payment of rent. On the same date the lessors gave to the lessee a three-day notice to pay rent or quit, under the provisions of Rem. Comp. Stat., §§ 812 *et seq*. On February 4, 1929, lessors commenced their action under the unlawful detainer statute.

On February 4, 1929, also, lessee served its second amended complaint in this action, praying that lessors be restrained from canceling the lease and from prosecuting any action under the unlawful detainer statute so long as the damages due to the lessee from the lessors for failure to repair were greater than the amount due the lessors from the lessee for rent. These actions were subsequently consolidated for trial. On March 19, 1929, lessors notified lessee that they had canceled the lease pursuant to the thirty-days' notice of January 9, 1929, on account of the failure of the lessee to pay the rent.

After the consolidation of the two actions for trial,

the court proceeded with the lessee's action first and then heard the lessors' action under the unlawful detainer statute.

The trial court made comprehensive findings of fact, comprising thirteen typewritten pages, which are much too long to set forth in an opinion and will be referred to only as needed.

After the filing of the second amended complaint and an affidavit accompanying the same, a show cause order and temporary restraining order were issued, restraining appellants from canceling the lease, and ordering them to show cause why a permanent injunction should not be entered. In the second amended complaint, upon which the restraining order was granted, respondents alleged that the want of repair of the building was known to the lessors and unknown to the lessee at the time of the execution of the lease; that the refusal of the lessors to repair was willful and part of a fraudulent conspiracy to defraud the lessee; that the lessors are insolvent; that the lessors had threatened to forfeit and terminate the lease and unless restrained respondent would suffer irreparable damages.

Motion was made by appellants to vacate the restraining order, which, upon being heard by the lower court, was denied, but respondent was required to file a bond of $2,500 and directed that all rents collected by the lessors should be deposited with the clerk of the court. Later, because of the failure of respondent to file its bond and its failure to deposit rents collected, the court dissolved the restraining order.

The errors assigned are that the court erred in entering this order restraining appellants from proceeding with the unlawful entry and detainer action pending the trial of the cause; in consolidating the two causes for trial; in making conclusion of law No. 2; in

making conclusion of law No. 3; and in entering the decree herein.

The findings are not attacked, nor is the evidence brought here for review. Conclusion of law No. 2, which is attacked, is that plaintiff's remedy at law is inadequate and plaintiff is entitled to an injunction against appellants enjoining them from canceling or attempting to cancel the lease or ousting or attempting to oust plaintiff from the premises until after the necessary repairs to the building shall have been made, not, however, including any changes, alterations or reconstruction of the building required by the condemnation, or eminent domain proceedings, for the widening of Sixth avenue. The portion of this conclusion to the effect that appellants are not required to make the changes, alterations or reconstruction of the building required by the condemnation or eminent domain proceedings for the widening of Sixth avenue, is assailed by respondent and is the basis of a cross-appeal by it.

Conclusion of law No. 3, which is attacked, is to the effect that a decree should be entered without prejudice to the right of respondent to recover such damages as may be due it on and after May 1, 1928, by reason of the state of disrepair of the premises, and without prejudice to the right of appellants to recover for rent accruing after May 1, 1929.

The decree follows the findings and conclusions.

■ Appellants begin their argument upon the premise that a lessor's covenant to repair is independent of the lessee's covenant to pay rent. It seems to have been so admitted at the trial, and the trial court so adjudged. This proposition is well settled. See 36 C. J. 323, §§ 1126 and 1128; 16 R. C. L. 943, § 450; *Ralph v. Lomer*, 3 Wash. 401, 28 Pac. 760. But it is not all controlling upon the right of recoupment by the

tenant under a lease. *Thompson Estate v. Washington Investment Co.*, 84 Wash. 326, 146 Pac. 617.

 Appellants then contend that the right to maintain the action of unlawful detainer is absolute when the rent is not paid, no matter what legal or equitable defenses the tenant might have independently. It is argued that our statute giving the summary remedy in forcible entry and detainer is exclusive. Rem. Comp. Stat., §§ 812 and 830 are relied upon, which read:

"§ 812. A tenant of real property for a term less than life is guilty of unlawful detainer either,—

. . . . . . . . .

"(3) When he continues in possession in person or by subtenant after a default in the payment of any rent, and after notice in writing requiring in the alternative the payment of the rent or the surrender of the detained premises, served (in manner hereafter in this act provided) . . ."

"§ 830. The court may relieve a tenant against a forfeiture of a lease and restore him to his former estate, as in other cases provided by law, where application for such relief is made within thirty days after the forfeiture is declared by the judgment of the court, as provided in this chapter. The application may be made by a tenant or subtenant, or a mortgagee of the term, or any person interested in the continuance of the term. It must be made upon petition, setting forth the facts upon which the relief is sought, and be verified by the applicant. . . . In no case shall the application be granted except on condition that full payment of rent due, or full performance of conditions of covenants stipulated, so far as the same is practicable, be first made."

Appellants then assert that this court has, from the earliest times, held that the breach of an independent covenant upon the part of the landlord is no defense to the statutory action of unlawful detainer.

*Ralph v. Lomer, supra; Phillips v. Port Townsend Lodge F. & A. M.*, 8 Wash. 529, 36 Pac. 476; *Carmack*

*v. Drum,* 27 Wash. 382, 67 Pac. 808; *Morris v. Healy Lumber Co.,* 33 Wash. 451, 74 Pac. 662; *Bond v. Chapman,* 34 Wash. 606, 76 Pac. 97; *Meyer v. Beyer,* 43 Wash. 368, 86 Pac. 661; and *Hutchinson v. Wilson,* 54 Wash. 410, 103 Pac. 474, of the decisions of this state as well as *Hunter v. Porter,* 10 Idaho 86, 77 Pac. 434; *Rogers v. Grote Paint Co.,* 118 Mo. App. 334, 94 S. W. 548; *Woods v. Soucy,* 166 Ill. 407, 47 N. E. 67; *Campbell v. Shipley,* 41 Md. 81, and *Crosby v. Jarvis,* 46 Misc. Rep. 436, 92 N. Y. Supp. 229, from other jurisdictions, are cited to sustain that proposition.

It is true that the cases cited upon the issues and facts pending in them, as decided by the court, give support to the position of appellants. In our *Ralph* case, *supra,* it was held that, in an action by a landlord against a tenant to recover possession of property for failure to pay rent, it was inadmissible to set up a counterclaim for damages on account of the loss of business, depreciation in the value of furniture purchased for use on these premises, and for repairs, which were alleged as the result of acts on the part of the landlord.

In the *Phillips* case, supra, it was held that, in an action instituted by a landlord against the tenant for rent under the forcible entry and detainer act, an answer setting up a counterclaim on account of repairs made by the tenant, which it was the duty of the landlord to make, is demurrable on the ground that it does not state a defense. The later cases cited and relied upon were somewhat similar in their issues. A much later case by this court, referred to by appellants as not contrary to the rule previously established, is *Andersonian Investment Co. v. Wade,* 108 Wash. 373, 184 Pac. 327.

In the last cited case, we said:

"But this court has not uniformly applied the rule

for which the appellant contends. In *Brown v. Baruch,* 24 Wash. 572, 64 Pac. 789, an action of forcible detainer, the defendant pleaded facts by way of an equitable estoppel, and this court sustained a judgment in his favor based on such facts, notwithstanding the objection of the plaintiff that such a defense was not available because of the nature of the action. Other instances where this principle is recognized, although not directly presented, can be found in the following cases: *Teater v. King,* 35 Wash. 138, 76 Pac. 688; *Watkins v. Balch,* 41 Wash. 310, 83 Pac. 321, 3 L. R. A. (N. S.) 852; *Northcraft v. Blumauer,* 53 Wash. 243, 101 Pac. 871, 132 Am. St. 1071; *Hutchinson Investment Co. v. Van Nostern,* 99 Wash. 549, 170 Pac. 121."

We, further in that case, said:

"We cannot conclude, therefore, that a defendant in an unlawful detainer action can in no case present an equitable defense; his right to do so, we think, must depend upon the acts which give rise to the action. If he acquires possesssion lawfully and it is sought to oust him because of his subsequent acts, he may defend by setting up any defense which will justify his acts. On the other hand, if his possession was wrongfully acquired, or if acquired under circumstances where to permit him to hold possession would violate the express provisions of the statute, he may not defend by showing right of possession, either legal or equitable."

Appellants contend that paragraph seventeen of the lease above quoted does not waive any rights of the lessors under the unlawful detainer statute, and cites certain cases to that point. The leading case to that effect cited is that of *Hunter v. Porter, supra,* where the provisions of the lease were very similar to the provisions of paragraph seventeen of the lease in suit. That court seems to have unduly extended the application of our early decisions.

The validity of the lease contract is not questioned by anyone in this case. When parties deliber-

ately enter into a contract which is valid in all respects, we have, with almost unvarying uniformity, followed the principle that the provisions of such contracts should be enforced. See *Goss v. Northern Pacific Hospital Ass'n.*, 50 Wash. 236, 96 Pac. 1078; *Heaton v. Smith*, 134 Wash. 450, 235 Pac. 958. To the same effect is the decision of the United States supreme court in the *Henderson* case, *infra*.

It is to be borne in mind that leases of valuable business property in our larger cities are often made for such a great length of term as to amount almost to a fee estate. The leasehold interest is very valuable. It is to be presumed that in such case a lessee would want much more than the three-days' notice provided by the unlawful detainer statute for the termination of the lease. They have the right to have some such provision inserted in their contracts of lease. When, then, they procured, in this case, a rather long term with a provision that "lessors may at their option upon thirty-days' written notice to the lessee terminate this lease," there can be little doubt that the parties had in mind the unlawful detainer statute and contracted with reference to it.

It is to be noted also that there are severe penalties imposed upon the lessee in case of a forfeiture of the term, which they would undoubtedly desire to postpone and provide as long a period of notice as not less than thirty days.

We are convinced, therefore, that this provision of the lease was intended to supplant the statutory notice of three days.

 Here, respondent's possession was lawful. According to the allegations and the findings of the trial court, covenants contained in paragraph three of the lease were violated by the lessors by failure to put in tenantable condition when the city notified them

that the roof and floors of the leased premises were in need of repair; when the city officially condemned the west half of the leased premises as unsafe except a small portion which had been repaired; when the city notified all parties to this action that the entire first floor was in an unsafe condition and that no part of the same could be occupied or used until reconstructed and made safe under a permit from the building department of the city; when the city further notified all parties that the entire building was condemned and unfit for occupancy, lessee, however, being permitted by the city to use a small part of the building by placing temporary supports under that portion then occupied by tenants; when the city took title to the twelve-foot strip by condemnation along the front of the building which covered the leased premises which was expressly excepted from the property covered by the lease and which, under the provisions of paragraph three of the lease, the lessors were required at their own expense to reconstruct to make the building conform to the property as it should remain after such condemnation proceedings. The last provision excepting the twelve-foot strip was undoubtedly due to the fact that lessors were to take and did take all of the award under such condemnation.

The *Andersonian Investment Co.* case, *supra,* seems therefore to fit this case very closely. The *Thompson Estate* case, *supra,* is also very similar.

The trial court also found that, on account of the loss of rents occasioned by the breach of the covenants of the lessors, knowing that the premises were intended to be used as a public market and all the space therein sub-let, from loss of rents up to and including September 30, 1928, was the sum of $200; and that from October 1, 1928 to May 1, 1929, the lessee suffered damages in the total sum of $10,691.97 com-

puted to April 30, 1929; that the rent during that period would amount to $10,400; from which it is plain that appellants were indebted to respondent in a sum greater, during all that time, than the amount of the rent which would have accrued, amounting to $491.97. The court thereupon found (or concluded) that respondent is entitled to offset his damages against rent, and that appellants are therefore indebted to respondent to the amount of damages above stated.

The trial court found that appellants were not guilty of fraud at the time of the execution of the lease, nor at any other time, as alleged in the second amended complaint; and that appellants are not, nor were they at the time of the execution of the lease, insolvent.

Upon this finding, appellants vigorously contend that respondent is not entitled to any injunction enjoining the forfeiture of the leasehold and that since appellants are amply able to respond in damages the only remedy available to respondent is in damages.

Inasmuch as the large sum of $15,000 was paid by the assignor of respondent as a consideration for this lease; that the lease was for a term of four years with a total rental to be paid by the lessee of $158,700, it is manifest that this leasehold was very valuable. The lessee also has the option to purchase the property for the sum of $255,000, upon certain terms in the lease specified.

Under such conditions, a forfeiture would be most inequitable and any action at law available to respondent, inadequate. Under the decree, appellants are not enjoined from maintaining an action for their rent at any time, but are only enjoined from maintaining a particular kind of action which would lead to a forfeiture until such time as they perform their part of the lease contract. In the unlawful detainer action,

appellants do not seek to continue their contract and recover their rent, but to enforce a forfeiture; and forfeitures are never favored. Equity always leans against them, and only decrees in their favor when there is full, clear and strict proof of the legal right thereto. *Henderson v. Carbondale Coal & Coke Co.*, 140 U. S. 25; *Ingram v. Golden Tunnel Mining Co.*, 25 Wash. 318, 65 Pac. 549.

Nor is the solvency of the lessors and their responsibility for such damages as have been established against them a factor to be considered in such case as this. Where a lessee has such a positive equitable right to a continuance in possession and would forfeit such a large sum as $15,000, together with the rental value for the remainder of the term in the premises, equity should intervene on behalf of a tenant in such a situation to prevent a forfeiture. 16 R. C. L. 1186; *Kauffman v. Liggett*, 209 Pa. St. 87, 58 Atl. 129, 103 Am. St. 988, 67 L. R. A. 353; *Boole v. Johnson*, 11 Del. 364, 102 Atl. 782; *Schenectady Holding Co. v. Ashton*, 197 N. Y. Supp. 476; *Ostenberg v. Scottsbluff Investment Co.*, 106 Neb. 143, 183 N. W. 95.

In the *Ostenberg* case, *supra*, the lessor was enjoined from prosecuting an action of forcible entry and detainer for nonpayment of rent. It was disclosed that, besides the monthly installments of rent reserved, there was a cash payment of $1,800 in addition. There were no covenants on the part of the lessors of such great value as are contained in the lease before us. The court there held that equity has power to relieve against a forfeiture of a lease for the nonpayment of rent at the time stipulated, and such power should be exercised when the circumstances are such as to call for the exercise of equitable principles, and where, if withheld, gross injustice will follow when the failure to pay rent was not willful, or such culpable neglect

to amount to the same thing. It was further held that, where, by the terms of a five-year lease, $1,800 was paid in the beginning to be applied on the last year's rent, that in case of the nonpayment of rent and forfeiture of the lease, the $1,800 cash advanced would be forfeited to the lessor, equity would relieve against the enforcement of such a penalty.

Much more should equity relieve against the forfeiture of such cash payments and other benefits to be derived under the lease in suit here.

It is well settled that, when the conditions and circumstances are such as to warrant the interference of equity, equity will assume jurisdiction for all purposes and give such relief as may be required.

Under the facts found by the trial court in this case, we have no doubt that there was ample justification for the intervention of the equity powers of the court under respondent's action and the consolidation of appellants' action therewith, so that the equities and rights of all parties should be preserved. We have examined the many cases cited by both parties upon the questions involved in this case and consider it unnecessary to discuss many of them.

Upon the proposition as to whether rent can be recovered by a lessor when, by his own acts, he has deprived the lessee of the beneficial use of the property, besides the *Thompson Estate* and *Andersonian Investment Co.* cases, *supra,* see *Schmid v. Thorsen,* 89 Ore. 575, 170 Pac. 930, 175 Pac. 74; *Ravet v. Garelick,* 221 Mich. 70, 190 N. W. 637, 28 A. L. R. 1331, and notes appended thereto; and notes in 20 A. L. R. 1369. Compare *Alexis v. Pittinger,* 119 Wash. 626, 206 Pac. 370, 29 A. L. R. 733 and annotations thereto. The last cited case was a case where there was a partial constructive eviction of the tenant by acts of the landlord while the tenant still held possession. Compare, also, *Stevens*

*& Co. v. Pratt,* 119 Wash. 232, 205 Pac. 10, where the tenant had in fact abandoned possession of the premises because of the failure of the landlord to make repairs, after demand, which it had covenanted to make. The only question involved in the case was whether the lessee was justified in abandoning the premises after such breach of covenant by the lessor.

After careful consideration, we feel bound to concur with the trial court in its conclusions of law in so far as assailed by appellants.

■ Upon the cross-appeal of respondent, based upon that portion of the second conclusion of law heretofore set out, we are unable to agree with the trial court. The trial court made the following finding:

"Under proceedings brought by the city of Seattle under the Taylor avenue condemnation for the laying out and extension of Westlake avenue and the widening of Sixth avenue, a portion of said building 12 feet in width along its entire Sixth avenue frontage was taken by the said city of Seattle for street purposes, which said portion so taken is that portion of the property which was reserved from the grant in said lease, which reservation is specified in paragraph 2 thereof as,

" 'That portion taken by the city of Seattle for the widening of Sixth avenue under the Taylor avenue, *et al.,* extension proceedings.'

"Said condemnation proceedings were completed and title to the portion of the property so taken passed to the city of Seattle on the 14th day of June, 1928, and since the date last aforesaid it has been known to all parties hereto and to the city of Seattle what portion of the building would be required to be removed to conform to the new street lines of Westlake and Sixth avenues. No other action has been taken by the city of Seattle to require the vacation of the condemned portion above referred to, and the city of Seattle has heretofore demanded rent for the said premises from the defendants herein, lessors. Because of said condemnation the Westlake Public Market building, being the leased premises, as the same exists today and as

leased to plaintiff herein, has not access to Sixth avenue except over property owned and occupied by the city of Seattle, the tenure of which access is uncertain, and plaintiff, as lessee, is subject to ouster therefrom. It is impossible to rent any space without the building being reconstructed to conform to the new street lines, or in the alternative, that some arrangement be made with the city of Seattle by which lessee may, during the term of the lease, pass over said portion owned and occupied by the said city; that a map of said building and the Sixth avenue frontage is in evidence as plaintiff's Exhibit 'A' and is by reference made a part hereof.''

The city of Seattle has by condemnation obtained title to the strip in question. It is obligatory under the lease that appellants reconstruct the building to make it conform to the property as it remains after the condemnation. The lease generally also requires appellants to put and maintain the building in proper tenantable condition. It is immaterial whether the city has given any order to any of the parties to restore the building. That is the duty incumbent upon appellants under the covenants of their lease. Under the finding of the court above quoted, respondent has no access to Sixth avenue, except over this strip of condemned land owned by the city. All parties are subject to ouster therefrom at any time. It is impossible to rent any space without the building being reconstructed to conform to the new street lines.

To deprive a tenant of rights guaranteed by his lease contract is to disturb the substantial enjoyment of the tenure; *Wusthoff v. Schwartz,* 32 Wash. 337, 73 Pac. 407; *Bancroft v. Godwin,* 41 Wash. 253, 83 Pac. 189; *Alexis v. Pittinger, supra;* and to deprive of a means of access essential to the substantial enjoyment of the use of the premises, is such a disturbance of his quiet enjoyment as to entitle him to damages and in a

proper case to injunctive relief. *Lindbloom v. Berkman,* 43 Wash. 356, 86 Pac. 567; *Matzger v. Arcade Building & Realty Co.,* 80 Wash. 401, 141 Pac. 900, L. R. A. 1915A 288; *Matzger v. Arcade Building & Realty Co.,* 102 Wash. 423, 172 Pac. 47.

We therefore conclude that, under the provisions of the lease in suit and the facts as found by the trial court, the prayer of respondent should have been granted and that appellants be ordered and directed to restore the walls of the building within the twelve-foot strip owned by the city at the expense of appellants, the lessors. From these considerations, we conclude that the decree of the lower court should be affirmed upon the appeal of appellants, and reversed upon the cross-appeal of respondent, and remanded with directions to the lower court to proceed in conformity herewith. It is so ordered.

MITCHELL, C. J., FULLERTON, MAIN, and FRENCH, JJ., concur.