[No. 7880–1–I.   Division One.   May 18, 1981.]

ERIC C. PHILLIPS, JR., ET AL, *Respondents*, v. JACK B. HARDWICK, ET AL, *Appellants*.

*Robert G. Maslan,* for appellants.

*R. Drake Bozarth,* for respondents.

RINGOLD, J.—Jack and Kathi Hardwick appeal from a judgment for outrageous conduct in the amount of $11,379

plus interest in favor of Eric and Theresa Phillips. We reverse in part, affirm in part.

On September 21, 1977, the Hardwicks and Phillips entered into an earnest money agreement for the sale and purchase of the Hardwicks' home in Bothell, Washington. The agreement provided for possession on closing which was not to occur before November 21, 1977. After the Phillips obtained bank financing, the parties were notified that closing would occur on the 25th of November. In the third week of November the Hardwicks were advised that their new home could not be completed by November 25. The parties entered into a rental agreement permitting the Hardwicks to rent the Bothell residence until December 1, 1977, or if properly vacated earlier, to that date, whichever should come first.

During the evening of November 30, Phillips telephoned Hardwick who advised that there was a problem and that he would be unable to vacate the premises by December 1. On Friday, December 2, Phillips again called to see if the Hardwicks would be out by Saturday noon. Hardwick replied that they would not be out and that there was nothing Phillips could do about it since he was a tenant and had a right to notice prior to eviction.

In the early afternoon of Saturday, December 3, Phillips drove by the house and it appeared vacant. He entered the residence and observed that everything had in fact been removed. He telephoned his attorney and informed him that the house had apparently been vacated and was advised that he could take possession. He contacted approximately 16 friends to aid in the move which he arranged for Sunday morning, the 4th. The Phillips remained up all night in preparation for the move. The next morning, at approximately 8:30 a.m., Phillips arrived at the residence with a carload of furniture. Hardwick's automobile was blocking the driveway, but was moved at Phillips' request. Phillips unloaded his automobile and returned to his residence to secure another load. Upon his return at approximately 10 a.m. he observed two deputy

sheriffs on the scene and a dispute arose between Hardwick and Phillips concerning who had the right to possession. After much controversy, and although advised by the deputy sheriffs that they did not have a right to possession, the Hardwicks refused to move and the Phillips had to retrieve all their possessions and move back to their old residence. Although nothing was in the Bothell residence, Mr. Hardwick slept there that night in a sleeping bag and permanently moved out the next day. On Monday, December 5, Phillips, through his attorney, commenced two separate lawsuits; an unlawful detainer action, and an action seeking damages for the intentional infliction of emotional distress and outrage. Summons and complaints in both actions were served on the Hardwicks on the same day. On December 8, 1977, Hardwick formally relinquished possession of the premises and delivered the keys to Phillips' counsel and paid rent through December 8, 1977. The Phillips moved into the residence on December 10, 1977. On December 13 the trial judge dismissed with prejudice the unlawful detainer action. The Phillips continued the second cause of action, alleging: (a) breach of contract for failure to vacate the premises on December 1, 1977; (b) additional rent due on the premises; (c) business interruption; and (d) intentional infliction of emotional distress.

## Res Judicata

The Hardwicks contend that the trial court erred when it refused to dismiss the action for intentional infliction of emotional distress and outrage under the theory of res judicata. They argue that: (1) under the Residential Landlord–Tenant Act of 1973, RCW 59.18, not only is the issue of possession before the court, but also related damages, and that the damages relating to intentional infliction of emotional distress and outrage could have been determined under the unlawful detainer action; (2) once that action was dismissed, the second action should also have been dismissed under the doctrine of res judicata.

Unlawful detainer actions under RCW 59.18 are

special statutory proceedings with the limited purpose of hastening recovery of possession of rental property, and the superior court's jurisdiction in such action is limited to the primary issue of the right of possession, plus incidental issues such as restitution and rent, or damages. Any issue not incident to the right of possession within the specific terms of RCW 59.18 must be raised in an ordinary civil action.

The doctrine of res judicata bars the relitigation of a cause of action because of an identity of parties and issues culminating in a final judgment. *Bordeaux v. Ingersoll Rand Co.,* 71 Wn.2d 392, 395–96, 429 P.2d 207 (1967); Restatement of Judgments § 68, comment *a* (1942). For the doctrine of res judicata to apply, the matters must have been, or in the exercise of reasonable diligence could have been, decided in the prior cause. *E.g., Bradley v. State,* 73 Wn.2d 914, 442 P.2d 1009 (1968); *Sanwick v. Puget Sound Title Ins. Co.,* 70 Wn.2d 438, 441–42, 423 P.2d 624, 38 A.L.R.3d 315 (1967); *Meder v. CCME Corp.,* 7 Wn. App. 801, 804, 502 P.2d 1252 (1972). Res judicata requires a concurrent identity of subject matter, claim for relief, persons and parties, and the quality of the persons for or against whom the claim is made. *Meder v. CCME Corp., supra* at 805. Here, the Phillips' separate cause of action did not specifically relate to possession or related damages but was much broader and included issues relating to (1) breach of contract; (2) business interruption; and, (3) intentional infliction of emotional distress. Under such circumstances the trial court properly denied the motion to dismiss.

## Intentional Infliction of Emotional Distress and Outrage

The Hardwicks next contend that their refusal to move until after an unlawful detainer action proceeding had been commenced was not such extremely outrageous conduct that would make them liable for intentional infliction of emotional distress and outrage. They also argue that the evidence is insufficient to meet the requirements in

*Grimsby v. Samson,* 85 Wn.2d 52, 530 P.2d 291, 77 A.L.R.3d 436 (1975), to establish the tort of outrageous conduct.

■■ Where the trial court has weighed the evidence, appellate review is limited to determining whether the trial court's conclusion of law and judgment are supported by the findings, and whether the findings in their turn are supported by substantial evidence. *Holland v. Boeing Co.,* 90 Wn.2d 384, 390, 583 P.2d 621 (1978). Substantial evidence is evidence sufficient in quantum to persuade a fair-minded person that a given premise is the truth. *In re Snyder,* 85 Wn.2d 182, 532 P.2d 278 (1975). The tort of intentionally inflicting emotional distress by outrageous conduct was first recognized in this jurisdiction in *Grimsby v. Samson, supra.* In that case, the Supreme Court adopted Restatement (Second) of Torts § 46 (1965):

> Outrageous Conduct Causing Severe Emotional Distress
> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

The court went on to quote the Restatement's definition of extreme and outrageous conduct:

> Liability exists "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

(Italics omitted.) *Grimsby v. Samson, supra* at 59.

■ The question of whether certain conduct is sufficiently outrageous is ordinarily a question for a jury. *Jackson v. Peoples Fed. Credit Union,* 25 Wn. App. 81, 604 P.2d 1025 (1979). It is, however, for this court to determine in the first instance that reasonable minds could differ on whether the conduct has been sufficiently extreme and outrageous to result in liability. *Bowe v. Eaton,* 17 Wn. App. 840, 565 P.2d 826 (1977). Restatement (Second) of Torts §

46, comment *h* (1965). Paraphrasing the factors considered by the court in *Jackson v. Peoples Fed. Credit Union, supra* at pages 86–87, this court must consider (a) the position occupied by the defendant; (b) whether plaintiff was peculiarly susceptible to emotional distress, and if defendant knew this fact; (c) whether defendant's conduct may have been privileged under the circumstances; (d) the degree of emotional distress caused by a party must be severe as opposed to constituting mere annoyance, inconvenience or the embarrassment which normally occur in a confrontation of the parties; and, (e) the actor must be aware that there is a high probability that his conduct will cause severe emotional distress and he must proceed in a conscious disregard of it. Restatement (Second) of Torts § 46, comments *e, f,* and *g.*

*Meiter v. Cavanaugh,* 40 Colo. App. 454, 580 P.2d 399 (1978), is factually similar to the cause at bench. The plaintiff and defendant entered into a specific performance contract under which plaintiff was to purchase defendant's home. The contract provided that defendant would have a right to retain possession of the property on a rental basis for a period not to exceed 6 weeks after delivery of the deed. The deed was delivered at the closing on April 12, 1977, resulting in defendant's rental period ending on May 25. The plaintiff was entitled to exclusive possession the next day. Sometime in late May or early June, plaintiff went to the house to inquire about the surrender of possession. Defendant informed her for the first time that he would be unable to move until the end of his children's school term, sometime in early June. Plaintiff explained that her daughter–in–law desperately needed a place to stay. Defendant became quite belligerent, threatened plaintiff with legal action and implied that the courts would look favorably on his position, and refused to move. When the premises were finally vacated in early July, plaintiff found they had been damaged. The court held that reasonable

minds could differ on the question of whether this series of acts was "outrageous," and that the question was properly submitted to the jury.

In the instant case, it is undisputed that the rental agreement provided that the Phillips were entitled to possession no later than December 1, 1977. The actions of the Hardwicks on December 4 requiring the Phillips to remove all their furniture and possessions from the premises when they had no intention of continuing to reside in the premises constituted an act that a trier of fact could find was outrageous and beyond the bounds of decency. The Hardwicks compounded the issue when they contacted the sheriff's department and insisted that they had a right to possession under these circumstances. The Hardwicks knew that the Phillips had rented their other residence and this intentional delay would result in the party being unable to move. The delay also resulted in the Phillips' inability to enjoy their new home for the holiday season. The actions resulted in damages to the Phillips. Substantial evidence supports the trial court's findings.

## ATTORNEY'S FEES

Phillips request attorney's fees pursuant to the unlawful detainer act, RCW 59.18.290(2):

> It shall be unlawful for the tenant to hold over in the premises or exclude the landlord therefrom after the termination of the rental agreement except under a valid court order so authorizing. Any landlord so deprived of possession of premises in violation of this section may recover possession of the property and damages sustained by him, and the prevailing party may recover his costs of suit or arbitration and reasonable attorney's fees.

The present action was not brought under RCW 59.18, which was the reason the trial court denied the motion to dismiss under the doctrine of res judicata. Phillips, therefore, is not entitled to attorney's fees either at trial or on appeal.

Affirmed in part and reversed in part.

WILLIAMS and CORBETT, JJ., concur.