Hong Kim TAING, Plaintiff–Appellant,

v.

BOEING COMPANY, a corporation; Darcy Farrens; John Doe Farrens, wife and husband, Defendants–Appellees.

No. 01–35011.

D.C. No. CV–01–01099–BJR.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 9, 2002.

Decided Aug. 7, 2002.

Before REAVLEY,\* TASHIMA, and RAWLINSON, Circuit Judges.

### MEMORANDUM\*\*

This case stems from events that transpired in a meeting between a Boeing employee named Hong Kim Taing, her supervisor, and a union representative. Taing appeals the dismissal of her Washington tort of outrage claim, which, on a motion for summary judgment, the district court dismissed as preempted under § 301 of the LMRA.[1] Although we find that the claim as alleged is not preempted, we neverthe-

---

\* The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9TH CIR. R. 36–3.

1. 29 U.S.C. § 185(a).

less affirm the district court's dismissal on the grounds that there is no disputed issue of material fact on the question of whether the conduct at issue was outrageous.

## I. Background

On December 13, 1999, Hong Kim Taing and another employee were called into a meeting by a supervisor (Darcy Farrens) about possible mistreatment of a pregnant employee who was rumored to be keeping her job, while Taing and others were being laid off. A union representative, Charles (Chuck) Ewen, was also present. After the meeting was over, Taing immediately approached another supervisor named Dave Groves to discuss with him what it was that caused her to get in trouble.[2] Overhearing some aspect of this interaction, Farrens called Taing back into the meeting room for a second time, to explain to her why it was inappropriate to have such a conversation after the first meeting.

This second meeting forms the basis of Taing's intentional infliction of emotional distress claim. Taing became upset during the meeting, and after a few minutes asked that the meeting end. She became more distressed, and asked Farrens to "please stop, please stop." She testified at her deposition that she told Farrens she did not feel well, and requested that the meeting end so that her blood would not go up. Farrens apparently continued to lecture her, at which point Taing began to hyperventilate and squat on the floor. Taing characterizes the episode as a convulsion, or seizure.[3] It is not in dispute that

Farrens then ceased lecturing Taing, and she and Ewen called the paramedics, who took Taing to the hospital.

The entirety of the second meeting prior to Taing's collapse was fairly short; Farrens stated that it lasted only a few minutes, although Taing suggested in her deposition that it might have been more than five. There is no evidence that Farrens cursed or hurled insults at Taing during the meeting, although Taing characterizes Farrens' speech as "berating" and "scolding." Taing cites one instance of Farrens yelling, "I don't care how mad you are because you have to listen to Chuck"; Ewen also told Taing that she had been wrong to approach Dave Groves.

## II. Preemption

■ A district court's finding of preemption is an issue of law, reviewed de novo.[4] A plaintiff's state law claim may be preempted by § 301 of the LMRA when the claim is either substantially intertwined with the terms of a CBA, or when the plaintiff is limited to rights and remedies established by the CBA, for example when the duties contained in a state tort are subject to contractual modification.[5] Although the issue is a close one, we hold that Taing's outrage claim is not preempted.

Taing argues that a supervisor like Farrens is governed by Washington's non-negotiable duty not to engage in extreme and outrageous behavior with the intent to inflict emotional distress, and that alleged-

2. Farrens and Ewen claim that Taing began screaming and creating a commotion after the first meeting, but we accept Taing's version of the facts as true. Taing did not rule out that she might have raised her voice.

3. The parties' briefs to the district court did not point to any medical evidence in the record describing exactly what happened to Taing.

4. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir.2001) (en banc), *cert. denied*, — U.S. ——, 122 S.Ct. 806, 151 L.Ed.2d 692 (2002).

5. *See id.* at 691.

ly abusive conduct like yelling at and continuing to lecture someone who is upset, crying, and on the verge of collapsing falls into a category of behavior that is governed by Washington's tort of outrage. We agree.

Under Washington law, the elements of the tort of outrage are:

(1) [E]xtreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress. The conduct in question must be *so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.*[6]

We have consistently found claims based on allegations of harassing or abusive conduct not to be preempted, either because such conduct cannot be tempered by the CBA, or because we find the purportedly applicable CBA provision not to "envision" or attempt to authorize the specific conduct alleged.[7] Under Washington law, abusive conduct in the workplace, as else-

where, can be actionable under the tort of outrage,[8] and the tort, as explained by Washington courts, sets up a non-negotiable standard of conduct.[9] To the extent that the contract *could* authorize the conduct alleged by Taing, Boeing does not point to any provision of the CBA that purports to do so. We see no CBA provision that could plausibly need to be interpreted given the narrowly targeted basis for "outrage" upon which Taing relies, i.e., the alleged incessant lecturing in an increasingly raised voice, while Taing became increasingly distraught and ill.

Significantly, Taing does not challenge Farrens' right to call a disciplinary meeting or to lecture employees; any plausible outrageousness that could be associated with those types of actions might very well be intertwined with (or "tempered by") the CBA's provisions authorizing management to direct the work force and investigate grievances, and thus require CBA interpretation and be preempted by § 301. Taing also has not based her claim on the breach of duties established by the CBA. Because her claim is based solely on Far-

---

**6.** *Commodore v. Univ. Mech. Contractors, Inc.,* 120 Wash.2d 120, 839 P.2d 314, 321 (1992) (citations and internal quotations omitted) (emphasis in original).

**7.** *Galvez v. Kuhn,* 933 F.2d 773, 777 (9th Cir.1991) (holding that racially abusive language and conduct could not arguably be sanctioned by the CBA); *Perugini v. Safeway Stores, Inc.,* 935 F.2d 1083, 1088 (9th Cir. 1991) (holding that the plaintiff's claims based on pregnancy-related harassment were not preempted); *see also Tellez v. Pac. Gas & Elec. Co.,* 817 F.2d 536, 539 (9th Cir.1987) (holding that a claim based on a supervisor's circulation of a suspension letter accusing the plaintiff of cocaine use was not preempted, despite CBA provisions authorizing employee discipline).

Boeing relies on *Saridakis v. United Airlines,* 166 F.3d 1272, 1278 (9th Cir.1999), for support to the contrary. Neither *Saridakis* nor the four cases it relied on dealt with

harassment or abusive conduct situations. *Galvez, Perugini,* and *Tellez,* which were not discussed in that case but which remain good law, more closely resemble the type of conduct at issue in the present case.

**8.** *See, e.g., Snyder v. Med. Serv. Corp. of E. Wash.,* 145 Wash.2d 233, 35 P.3d 1158, 1163 (.2001) (noting that allegations of an extreme pattern of harassment and verbal abuse in the workplace might create an action for outrage against a supervisor (though not the employer on the facts of that case)).

**9.** *Commodore,* 839 P.2d at 319. Although the Washington Supreme Court has defined the tort of outrage as "non-negotiable," we understand that to mean that there is a certain range of extreme and outrageous behavior to which the parties may not contractually agree (i.e. that is non-negotiably out of bounds), not that there are *no* outrage claims in which the parties' agreement might become relevant to determining outrageousness.

rens' allegedly abusive conduct within the meeting, which according to the complaint was sufficiently extreme to cause her to collapse, the claim is not preempted.[10]

### III. Summary Judgment Merits

We may affirm a state court's judgment on any basis that appears from the record.[11] Although Taing's state law claim is not preempted, we nevertheless affirm the district court's dismissal on the ground that Taing did not create a disputed issue of material fact as to whether the conduct in the second meeting was outrageous. Summary judgment is only proper where the pleadings, discovery, and affidavits show that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[12] For the tort of outrage under Washington law, "it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability."[13]

 Taking all of Taing's evidence as true, Farrens' conduct is not in the ballpark of Washington's standard for outrageousness, and the summary judgment evidence does not support the more extreme characterization of events contained in Taing's pleadings and briefs. Evidence that Farrens might have yelled at Taing once, combined with continued lecturing when Taing asked her to stop so her blood "won't go up and up," simply are not the types of behavior that Washington law recognizes as atrocious and utterly intolerable in a civilized society.[14] There is no evidence that Farrens continued her lecturing after Taing began to manifest symptoms of illness or an anxiety attack, nor was there evidence that Taing had ever experienced such an episode at work before. In terms of the content of Farrens' "beratement," there is nothing like the racial slurs at issue in *Contreras v. Crown Zellerbach Corp.*,[15] the case Taing cited to the district court to support her claim.

Although Taing experienced an extreme reaction to Farrens' lecturing, reasonable minds could not differ on the issue of whether Farrens' conduct, as described in Taing's summary judgment evidence, rose to the level of "intolerable in a civilized society."

The district court's judgment is affirmed.

**AFFIRMED.**

RAWLINSON, Circuit Judge, Concurring.

I concur in the result.

---

10. The preemption line drawing process is difficult, and must be evaluated on a case-by-case basis. We do not hold that every employer action described in a complaint as "abusive" will automatically be capable of defeating preemption. But our precedent also makes clear that just because conduct occurs in the workplace, or even in the course of a manager carrying out his or her CBA-authorized discretionary functions, for example disciplining employees, does not automatically insulate the employer from a state law outrage claim.

11. *Reynolds v. County of San Diego*, 84 F.3d 1162, 1166 (9th Cir.1996).

12. *Id.;* Fed.R.Civ.P. 56(c).

13. *Dicomes v. State*, 113 Wash.2d 612, 782 P.2d 1002, 1013 (1989) (quoting *Phillips v. Hardwick*, 29 Wash.App. 382, 628 P.2d 506, 510 (1981)).

14. *Birklid v. Boeing Co.*, 127 Wash.2d 853, 904 P.2d 278, 287 (1995) (quoting *Grimsby v. Samson*, 85 Wash.2d 52, 530 P.2d 291, 295 (1975)) ("Plaintiffs must necessarily be hardened to a certain degree of rough language, unkindness and lack of consideration.").

15. 88 Wash.2d 735, 565 P.2d 1173, 1176–77 (1977).