FILED
COURT OF APPEALS
DIVISION II

2014 JAN 14 AM 9: 26

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| GREGORY R. HART, | No. 43304-4-II |
| Respondent/Cross-Appellant, | |
| v. | |
| CITY OF LAKEWOOD, a municipal corporation, | UNPUBLISHED OPINION |
| Appellant/Cross-Respondent, | |
| CITY OF LAKEWOOD POLICE DEPARTMENT, a municipal corporation; and CITY OF LAKEWOOD PARKS DEPARTMENT, a municipal corporation, | |
| Defendants. | |

JOHANSON, A.C.J. — The city of Lakewood (City) appeals from the trial court's order denying summary judgment on Gregory R. Hart's defamation claim against the City. Hart cross appeals, claiming that the trial court erred in granting summary judgment to the City on Hart's malicious prosecution and intentional infliction of emotional distress claims against the City. We reverse the trial court's denial of summary judgment on the defamation claim because Hart failed to establish a prima facie defamation case against the City. We affirm the trial court's dismissal of Hart's malicious prosecution and intentional infliction of emotional distress claims because Hart also failed to establish prima facie cases on those claims.

FACTS

In May 2007, Hart removed and took possession of a City-owned gate from an area near a Lakewood park. After a City employee reported that Hart was damaging and dismantling the gate, Lakewood police officers responded and arrested Hart for malicious mischief and theft.

The City charged Hart with one count of third degree malicious mischief and one count of third degree theft. Lakewood Municipal Court determined that the City produced sufficient evidence of probable cause to support the charges. A jury found Hart not guilty of third degree malicious mischief and guilty of third degree theft. Hart appealed his conviction to the superior court, which found that the municipal trial court had erred in not offering a "claim of title" jury instruction relating to the gate's ownership. Clerk's Papers (CP) at 69. Accordingly, the superior court remanded the matter to the municipal court for retrial, which resulted in a jury acquitting Hart of the third degree theft.

Following his acquittal, Hart sued the City in superior court, claiming (1) malicious prosecution, (2) defamation, and (3) intentional and negligent infliction of emotional distress. Hart asserted that as a result of his prosecution related to the gate incident, he suffered harm to his professional reputation and his relationship with his domestic partner, Dianna Kilponen.

Hart based his defamation claim on an undated "Officer Safety Info" memorandum about Hart that Lakewood Police Sergeant John Unfred circulated to the Fife Police Department's Investigations Division sometime after Hart's gate incident. CP at 78. Kilponen worked for the Fife Police Department and read the memo. It detailed Hart's substantial criminal history and his interactions with law enforcement personnel. The one-page memo concluded,

> The bottom line is that Mr. Hart has a strong dislike of law enforcement, is
> very aggressive and irrational, and is known to carry weapons. He also enjoys

2

documenting scenes with cameras. I don't know if he's trying to bait [o]fficers into something or just paranoid, but please use caution when contacting.

CP at 78. While Hart did not dispute the criminal history that Sergeant Unfred chronicled in the memo, he claimed the phrase "very aggressive and irrational" was defamatory.

The City moved to dismiss Hart's claims on summary judgment. Hart conceded that he had no claim for negligent infliction of emotional distress, but he opposed the City's motion relating to the remaining claims. The trial court granted the City's motion in part, dismissing Hart's malicious prosecution, and intentional and negligent infliction of emotional distress claims as a matter of law, but it denied the City's motion to dismiss the defamation claim.

The City then asked the trial court to reconsider its order regarding Hart's defamation claim. The trial court denied the reconsideration motion, declining to rule as a matter of law whether Sergeant Unfred's characterization of Hart as "very aggressive and irrational" was a factual statement or opinion.

Following these proceedings at the trial court, the parties stipulated to stay their litigation pending outcome of their appeals. The City appeals the trial court's denial of its summary judgment and reconsideration motions that would have dismissed Hart's defamation claim. Hart cross appeals, claiming that the trial court erred in granting summary judgment to the City on his malicious prosecution and intentional infliction of emotional distress claims. We granted discretionary review.

## ANALYSIS

We review summary judgment orders de novo, viewing the facts in the light most favorable to the nonmoving party. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). Trial courts properly grant summary judgment where the pleadings

3

and affidavits show no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). When reviewing an order on summary judgment, we consider solely the issues and evidence the parties called to the trial court's attention on the summary judgment motion. RAP 9.12.

## DEFAMATION

The City claims that the trial court erred when it did not grant summary judgment to dismiss Hart's defamation claim. Even assuming, without deciding, that Sergeant Unfred's words constituted an actionable factual statement and not an opinion, Hart failed to establish that the City knew the alleged defamatory statement was false; and the common interest qualified privilege applies to bar Hart's defamation claim.[1]

A defamation plaintiff must establish four essential elements to recover for a defamation claim: (1) falsity, (2) an unprivileged communication to a third party, (3) fault, and (4) damages. *Bender v. City of Seattle*, 99 Wn.2d 582, 599, 664 P.2d 492 (1983).

## A. FAULT

The City asserts that the trial court should have dismissed Hart's defamation claim on summary judgment because he failed to establish the City's fault by presenting evidence that Sergeant Unfred knew or should have known the alleged defamatory statement was false. The City is correct. The degree of fault required by private figures alleging defamation is negligence. *Mark v. Seattle Times*, 96 Wn.2d 473, 483, 635 P.2d 1081 (1981), *cert. denied*, 457 U.S. 1124 (1982). Thus, a plaintiff must show that the person making a defamatory statement knew, or in

---

[1] Because we conclude that Hart fails to establish fault or that the common interest qualified privilege does not apply, we decline to address whether Sergeant Unfred's communication was a statement of fact or opinion, or whether the communication was false.

the exercise of reasonable care, should have known that the statement was false or would have created a false impression in some material respect. *Mark*, 96 Wn.2d at 483 (quoting *Taskett v. KING Broadcasting Corp.*, 86 Wn.2d 439, 445, 546 P.2d 81 (1976)).

Here, the City claims that "the record is devoid of any evidence" to show that Sergeant Unfred knew or should have known that his characterization of Hart as "very aggressive and irrational" was false or created a false impression. Br. of Appellant at 15. To rebut this argument, Hart states that he "has cited numerous facts and statements within the record showing that there is simply no evidence that he is dangerous or a threat to law enforcement."[2] Br. of Resp't/Cross-Appellant at 20. But in his brief, Hart does not cite any facts or statements to support his argument or demonstrate that he was not "very aggressive and irrational."

The record is devoid of any evidence that would have advised Sergeant Unfred or anyone else that characterizing Hart as "very aggressive and irrational" was false. To the contrary, the uncontested facts that Sergeant Unfred cites in his memo prior to characterizing Hart as "very aggressive and irrational" appear consistent with his characterization. For example, Sergeant Unfred describes Hart's prior arrest for pointing a handgun at a motorist during a road rage incident, as well as an arrest for shooting motorbike riders with steel ball bearings from a sling shot. The memo also recounts Hart's arrest relating to prostitution; at the time of arrest, he was carrying a firearm and knife, and within an hour of his arrest, he bailed out and returned in his van, driving back and forth in the area where police were continuing to conduct a prostitution sting operation. Six months after his prostitution-related arrest, Hart sent police a video of him confronting a prostitute and client, and the video showed Hart complaining about law

---

[2] Hart does not claim that the City defamed him by saying he is dangerous or a threat to law enforcement.

enforcement's lack of focus on prostitution. Finally, Sergeant Unfred's memo detailed that during a more recent arrest, Hart took pictures of officers as they contacted him and that on the afternoon that Sergeant Unfred wrote the memo, officers observed Hart flipping them off and photographing them as they patrolled.

Based on this evidence of Hart's road rage aggression and his confrontational attitude, coupled with his criticism of police for not targeting prostitution just months after he was arrested in a prostitution-related matter, one may reasonably conclude that Hart is "very aggressive and irrational." Because Hart cites to no evidence in the record that rebuts this characterization, he does not show that Sergeant Unfred knew, or in the exercise of reasonable care, should have known that his statement was false or would have created a false impression in some material respect. Thus, Hart failed to establish a prima facie defamation case, and the trial court erred in not dismissing this claim on summary judgment. *See Mark*, 96 Wn.2d at 483.

### B. QUALIFIED PRIVILEGE

The City also asserts that the common interest qualified privilege bars Hart's defamation claim. Again, the City is correct.

The common interest qualified privilege applies when the declarant and recipient have a common interest in the communication's subject matter. *Moe v. Wise*, 97 Wn. App. 950, 957-58, 989 P.2d 1148 (1999), *review denied*, 140 Wn.2d 1025 (2000). The qualified privilege is available for persons involved in the same organizations, partnerships, associations or enterprises who are communicating on matters of common interest. *Moe*, 97 Wn. App. at 958. And when a qualified privilege applies, a plaintiff cannot establish a prima facie defamation case unless the plaintiff clearly and convincingly shows that the declarant knew of the statement's falsity and

recklessly disregarded the knowledge. *Woody v. Stapp*, 146 Wn. App. 16, 21, 189 P.3d 807 (2008).

Here, Lakewood Police Sergeant Unfred sent a safety memo to the Fife Police Department to advise it of safety concerns relating to Hart. Because this document was sent between nearby police departments on a matter of common interest, officer safety relating to a local citizen, Sergeant Unfred's memo falls within the scope of the common interest qualified privilege. *See Moe*, 97 Wn. App. at 957-58. And as analyzed in the preceding section, Hart does not demonstrate that Sergeant Unfred made a false statement. Accordingly, Hart does not establish a prima facie defamation case. *See Woody*, 146 Wn. App. at 21.

Hart contends that Sergeant Unfred's statement characterizing Hart as "very aggressive and irrational" went "beyond the scope of what constitutes reasonable police conduct" because it drew unsupported factual conclusions about Hart and suggested personal animus toward Hart for exercising his Second Amendment rights to carry firearms and First Amendment rights to document scenes with cameras. Br. of Resp't/Cross-Appellant at 21. But as outlined above, Hart does not show that the record does not support Sergeant Unfred's characterization of Hart. And advising fellow police officers of Hart's propensity to carry and brandish firearms and use video cameras does not demonstrate a personal animus against Hart, but rather provides officers with information to help them better prepare themselves to safely perform their duties.

Hart next contends that the qualified privilege does not apply because the memo was improperly disseminated such that nonpolice entities, including Kilponen and Hart's business associate, Bill Gates, Sr., became aware of the allegations and consequently discontinued their relationships with Hart. Here, the record demonstrates that Kilponen learned of the memo in her capacity as a Fife Police Department employee. Because Kilponen learned of the memo as a

member of a police organization and not as a member of the public, the qualified privilege still applies. *See Moe*, 97 Wn. App. at 957-58. And the record does not demonstrate that Gates received a copy of the memo and, consequently, discontinued his relationship with Hart. According to Hart's own declaration, Gates no longer assisted him with business ventures "because of the City of Lakewood's conduct of prosecuting [Hart] for unfounded criminal misconduct." CP at 134. Thus, Hart admits that Sergeant Unfred's memo had nothing to do with Gates severing his business relationship with Hart.

Finally, Hart cites Kilponen's declaration in which she stated that Sergeant Unfred's memo "was not sent in the usual format for officer notes and information, of which [she was/is] familiar." CP at 148. Thus, Hart asserts that we must infer that the memo was not sent in the regular course of business but as part of a personal attack on Hart. Hart, however, does not establish how Sergeant Unfred submitted this safety memo to the Fife Police Department such that the common interest qualified privilege would not apply. And he offers no evidence to demonstrate that Sergeant Unfred held a personal animus against Hart. Again, Hart does not demonstrate that the common interest qualified privilege does not apply.

We hold that there are no questions of fact regarding Sergeant Unfred's absence of fault and the application of the qualified privilege. Accordingly, we hold that the trial court erred in failing to grant the City's summary judgment motion on Hart's defamation claim.

CROSS APPEAL

MALICIOUS PROSECUTION

Hart claims that the trial court erred in dismissing his malicious prosecution claim because the City had no evidence to support its malicious mischief charge against Hart and because a material issue of fact existed regarding the City-owned gate that the City accused Hart

8

of damaging and stealing. But the City is entitled to immunity in initiating prosecutions, and it had probable cause to prosecute Hart, thus barring Hart's malicious prosecution claim.

To maintain a malicious prosecution claim, a plaintiff must plead and establish that (1) the defendant instituted or continued the prosecution, (2) there was want of probable cause for the institution or continuation of the prosecution; (3) the defendant instituted or continued the prosecution through malice, (4) the proceedings terminated on the merits in favor of the plaintiff or were abandoned, and (5) the plaintiff suffered injury or damage as a result of the prosecution. *Hanson v. City of Snohomish*, 121 Wn.2d 552, 558, 852 P.2d 295 (1993).

A prosecuting attorney, acting in a quasi-judicial capacity, is, as a matter of public policy, immune from liability for acts done in her or his official capacity. *Creelman v. Svenning*, 67 Wn.2d 882, 884, 410 P.2d 606 (1966). "The public policy which requires immunity for the prosecuting attorney, also requires immunity for both the state and the county for acts of judicial and quasi-judicial officers in the performance of the duties which rest upon them." *Creelman*, 67 Wn.2d at 885. Here, because the City prosecutor charged Hart with malicious mischief within its official capacity in its performance of its duties, the City enjoys immunity from Hart's malicious prosecution claim. *See Creelman*, 67 Wn.2d at 884.

Moreover, before trial, the municipal trial court found probable cause to allow the case to be tried. Evidence supports this finding. Specifically, Lakewood police received a 911 call reporting "vandalism in progress" that involved "damaging" and "dismantling" a gate leading onto City property. CP at 174. A witness told police that Hart had bragged to neighbors about breaking the gate and taking part of it, and Hart told another witness that he had pulled down the gate. Officers then found and recovered the gate from Hart's property after he admitted taking it. Finally, evidence shows that the City maintained the gate at that location. Given this evidence,

9

the trial court reasonably found that the City established probable cause that Hart committed third degree malicious mischief.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Finally, Hart asserts that the trial court erred when it dismissed his intentional infliction of emotional distress claim. But the trial court properly denied this claim because Hart failed to establish a prima facie case.

To recover for intentional infliction of emotional distress, a plaintiff must prove (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual severe emotional distress on the plaintiff's part. *Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wn.2d 233, 242, 35 P.3d 1158 (2001) (quoting *Birklid v. The Boeing Co.*, 127 Wn.2d 853, 867, 904 P.2d 278 (1995)). Liability for intentional infliction of emotional distress exists when conduct is so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. *Grimsby v. Samson*, 85 Wn.2d 52, 59, 530 P.2d 291 (1975). Whether the conduct complained of is sufficiently extreme to result in liability is a preliminary question for the trial court before a claim may go to the jury. *Pettis v. State*, 98 Wn. App. 553, 563, 990 P.2d 453 (1999).

To determine whether conduct is sufficiently extreme, courts consider the following: (a) the position occupied by the defendant; (b) whether the plaintiff was peculiarly susceptible to emotional distress, and if the defendant knew this fact; (c) whether the defendant's conduct may have been privileged under the circumstances; (d) the degree of emotional distress caused by a party must be severe as opposed to a mere annoyance, inconvenience, or embarrassment which normally occurs in a confrontation of the parties; and (e) the actor must be aware that there is a

10

high probability that his conduct will cause severe emotional distress and he must proceed in a conscious disregard of it. *Birklid*, 127 Wn.2d at 867 (quoting *Phillips v. Hardwick*, 29 Wn. App. 382, 388, 628 P.2d 506 (1981)).

Here, Hart asserts that the City's outrageous conduct consisted of charging and trying Hart on misdemeanor theft and malicious mischief counts when it lacked any evidence to sustain the charges. This logic fails to consider that, as analyzed above, the City's evidence sufficiently established probable cause that Hart committed these crimes. Therefore, because the City had probable cause to pursue these criminal charges, it was not conducting itself extremely or outrageously. Absent a showing of extreme or outrageous conduct, Hart's intentional infliction of emotional distress claim fails. Accordingly, we affirm the trial court's dismissal of this claim.

We reverse the trial court's denial of summary judgment on Hart's defamation claim because Hart failed to establish a prima facie defamation case. We affirm the trial court's dismissal of Hart's malicious prosecution and intentional infliction of emotional distress claims because Hart failed to establish prima facie cases on those claims.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, A.C.J.

We concur:

BJORGEN, J.

MAXA, J.

11