[No. 40868-6-II.   Division Two.   April 17, 2012.]

ANGELO PROPERTY COMPANY, LP, *Respondent*, v. MAGED HAFIZ, *Appellant*.

790

*Michael B. King* (of *Carney Badley Spellman PS*) and *Benjamin L. Wolff*, for appellant.

*William A. Davis* (of *Davis Rothwell Earle & Xochihua*), for respondent.

¶1  HUNT, J. — Abdulhafiz Abdulmaged,[1] doing business as The Nile (collectively Maged), appeals the trial court's (1) attempted retention of statutory unlawful detainer jurisdic-

---

[1] For purposes of clarity in this opinion, we use the name "Maged," as appellant Abdulhafiz Abdulmaged refers to himself in his briefing and as some court documents also refer to him. We intend no disrespect.

tion[2] over the civil damages and counterclaim components of the parties' dispute below; (2) grant of summary judgment, damages, attorney fees, and costs to Angelo Property Co. LP, from which Maged had leased commercial real estate; and (3) dismissal with prejudice of Maged's constructive eviction counterclaim. Angelo filed an unlawful detainer action to evict Maged; Maged responded by vacating the property and surrendering his keys. He then filed three counterclaims for damages against Angelo, including one for constructive eviction.

¶2 On appeal, Maged argues that (1) the trial court lacked subject matter jurisdiction to hear his constructive eviction counterclaim as part of the unlawful detainer action because the counterclaim was not " 'based on facts which excuse a tenant's breach' ";[3] (2) the trial court lacked subject matter jurisdiction to continue hearing the parties' remaining damages and counterclaim disputes in the context of the unlawful detainer action after Maged formally surrendered possession of the property, Maged expressly waived any right to regain possession of the property, and the trial court entered an order that Angelo could re-let the property to another tenant; and (3) the trial court erroneously granted summary judgment to Angelo, both in its unlawful detainer action and on Maged's constructive eviction counterclaim. Maged also disputes several of the trial court's findings of fact and conclusions of law.

¶3 At the outset, we note several constraints on the scope of our opinion.[4] As we explain in more detail later, we do not

---

[2] Ch. 59.12 RCW.

[3] Br. of Appellant at 45 (quoting *Munden v. Hazelrigg*, 105 Wn.2d 39, 45, 711 P.2d 295 (1985) (quoting *First Union Mgmt., Inc. v. Slack*, 36 Wn. App. 849, 854, 679 P.2d 936 (1984))).

[4] We further note that neither the parties nor the trial court raised an issue about whether constraints on the scope of matters a superior court may decide in an unlawful detainer action are "jurisdictional" or merely relate to the court's statutory "authority" over the subject matter in an unlawful detainer proceeding. This potential issue is, thus, not before us. Nor would recharacterizing this case as one of exceeding the trial court's statutory authority change our resolution of the

address the merits of Maged's constructive eviction counterclaim below because the trial court exceeded the scope of its subject matter jurisdiction when it attempted to consider this counterclaim under its limited statutory authority to hear unlawful detainer actions without first converting the unlawful detainer action into an ordinary civil action. Nor do we address the merits of the issues allegedly before the trial court on summary judgment because the trial court had previously restored all possession rights in the property at issue to Angelo on or before August 15, 2008, when it granted Angelo authority to re-let the property to another tenant. The trial court, thus, had already resolved the "right to possession" and had exhausted its limited statutory authority over unlawful detainer actions. Because thereafter the trial court lacked subject matter jurisdiction to hear any further proceedings under its statutory unlawful detainer authority, it had no power to decide any further issues in this matter. Accordingly, we address only the issues properly before us.

¶4 We hold that the trial court exceeded the scope of its subject matter jurisdiction under the unlawful detainer statute when it heard Maged's constructive eviction counterclaim without first converting the unlawful detainer action into an ordinary civil action for damages.[5] We further hold that, when the trial court resolved the right to possess the property as of August 15, 2008, (1) it erred in contrarily concluding that the issue of "legal possession" to the property was unresolved as of that date; (2) its subject matter jurisdiction over the unlawful detainer proceedings ended; and (3) therefore, it lacked authority to issue any orders,

issues in this appeal because Maged has timely directed this court to the trial court's legal errors. *See Marley v. Dep't of Labor & Indus.*, 125 Wn.2d 533, 543, 886 P.2d 189 (1994); *Dike v. Dike*, 75 Wn.2d 1, 7-8, 448 P.2d 490 (1968) (characterizing a trial court's legal errors as voidable, but not void). Accordingly, we do not address this issue.

[5] Maged's counterclaim was not " 'based on facts which excuse a tenant's breach' " and, thus, did not fall within the narrow range of counterclaims allowed in unlawful detainer proceedings. *Munden*, 105 Wn.2d at 45 (quoting *First Union Mgmt., Inc.*, 36 Wn. App. at 854).

rulings, and factual determinations after August 15, 2008, while purporting to retain statutory unlawful detainer jurisdiction over the case.

¶5 Accordingly, we vacate (1) part four of the trial court's August 15, 2008 order, concluding that the "the issue of legal possession to the [property] is not yet resolved";[6] and (2) the trial court's other orders, rulings, and factual determinations entered after August 15, 2008, including the trial court's summary judgment order[7] and its final order and judgment dated May 14, 2010. We remand to the trial court for further proceedings.

## FACTS

### I. LEASE AGREEMENT

¶6 On December 19, 2005, Maged entered into a five-year lease agreement with Angelo to lease Suite 50 of Angelo's Cascade Village Center, a multiple-occupancy commercial complex in Vancouver, Washington. The parties agreed that Maged would open The Nile nightclub on the property and that the lease would take effect 30 days after Maged completed commercial improvements, commencing no later than April 1, 2006. Anticipating that he would operate The Nile for five years under the lease agreement, Maged invested approximately $500,000 in building improvements and business expenses and obtained the necessary operating permits. At some point after April 1, 2006, Maged took possession of the property and formally opened The Nile for business.[8]

---

[6] Clerk's Papers at 102.

[7] In vacating the trial court's summary judgment for Angelo, we include vacation of the trial court's dismissal with prejudice of Maged's constructive eviction counterclaim.

[8] According to Maged's May 20, 2009 and July 15, 2009 affidavits, in May 2007, however, Maged began experiencing racially motivated harassment from a neighboring Cascade Village Center tenant to whom Angelo also leased real estate. Maged reported this activity to Angelo's representatives, but Angelo took no action

¶7 On April 14, 2008, Angelo served Maged with a 30-day notice to comply with the lease agreement or to vacate the leased property (notice to quit), (1) listing 13 lease agreement covenants that Angelo alleged Maged had broken;[9] and (2) informing Maged that he had 30 days either to cure the alleged lease violations or to vacate the property, or he could be found liable for unlawful detainer of the property under chapter 59.12 RCW. According to Angelo, Maged failed to cure the lease violations or to vacate the property within 30 days.

## II. Unlawful Detainer Action

¶8 On May 30, 2008, Angelo filed a complaint against Maged under RCW 59.12.030(4) and RCW 59.12.030(5), alleging that Maged had continued to violate the lease covenants specified in its notice to quit; that he remained in possession of the property; and, therefore, that he had "unlawfully detain[ed]" the property under chapter 59.12 RCW. Clerk's Papers (CP) at 4. Angelo asked for a writ of restitution of the property, an order terminating Maged's tenancy, double damages for the period that Maged had unlawfully detained the property after May 14 (30 days from the April 14 notice to quit), and reasonable attorney fees under the lease agreement.

¶9 On June 17, Maged paid $6,834.95 for his June 2008 rent into the court registry. By June 18, Maged had informed Angelo that he believed Angelo had "unlawfully

---

to end the harassment. The trial court ultimately struck these affidavits as untimely and did not consider them in rendering summary judgment for Angelo. We agree with Angelo that these alleged facts are outside the scope of our review of the jurisdictional issues before us in this appeal. Nevertheless, we include them here to provide context for Maged's constructive eviction counterclaim, the dismissal of which is at issue in this appeal.

[9] These covenants related to using the property for unlawful purposes, interfering with the rights of other tenants, committing waste, failing to keep the property in good repair, and overburdening the parking area.

evict[ed]" him from the property[10] and that he no longer intended to operate The Nile. CP at 50. Maged then removed everything of value from The Nile, including all appliances, furniture and the liquor inventory. On July 1, he returned his keys to Angelo's property manager, Stacey Sillivan, and relinquished possession of the property. CP at 40, 47-48. According to Sillivan, Maged did not seek to reenter the property after he returned his keys, and he did not pay rent after July 1.

## A. Answer; Counterclaim; Motion for Conversion into Ordinary Civil Action

¶10 On June 16, 2008, Maged filed an answer, denying that he had failed to comply with the notice to quit or that he held the property in unlawful detainer. On July 15, Maged moved to amend his answer to add three counterclaims: (1) that Angelo had breached the lease agreement because its "action for unlawful detainer constitute[d] an interference with [Maged's] quiet enjoyment of [the] property and constructive eviction,"[11] CP at 40; (2) that Angelo was unjustly enriched by Maged's significant improvements to the property; and (3) that Angelo had intentionally interfered with Maged's business expectancy with his customers and suppliers. Maged attached a declaration that he had "surrendered possession" of the property to Angelo on July 1. CP at 37. Consistent with this declaration, Maged's proposed amended answer did not seek reinstatement in the property.

¶11 In his motion to file an amended answer asking to add counterclaims, Maged argued that an unlawful

---

[10] Maged asserted that (1) the unlawful detainer lawsuit was unfounded and that Angelo's *manner* of conducting the eviction was unduly harassing, suggesting that it may have been retaliatory; and (2) in the face of continued harassment, demonstrable false actions, and Angelo's commitment to terminate the tenancy, "Maged elected to surrender the premises." CP at 134.

[11] As we noted *supra* note 8, Maged apparently believed he was constructively evicted because Angelo had not taken action to end the neighboring tenant's racial harassment.

detainer action is a "summary proceeding,"[12] designed to restore the possession of leased property quickly and expeditiously; that a court normally may not allow a defendant to assert counterclaims or setoffs; and that, under *Munden v. Hazelrigg*,[13] a trial court may "convert" an unlawful detainer action into an ordinary civil action for damages when the right to possession ceases to be at issue at any time between the commencement of the unlawful detainer lawsuit and trial in that action. CP at 36. Because he had already "surrendered" actual possession of the property to Angelo, Maged asserted that possession was "no longer at issue" and that the trial court should convert the proceeding into an ordinary civil action under its general subject matter jurisdiction to hear all of Maged's counterclaims together without forcing him to file a separate lawsuit. CP at 36.

¶12 Angelo opposed Maged's motion to bring his counterclaims in a civil damages action under the court's general subject matter jurisdiction and accused Maged of attempting to make an "end-run" around the unlawful detainer statute by contesting the "legal right to possession" in an ordinary civil action. CP at 53 (emphasis omitted). Angelo argued that (1) although Maged had relinquished physical possession of the property when he vacated The Nile, he had "contend[ed that] he still has (or had) a *legal right* to possession";[14] and (2) therefore, the trial court was required to keep the proceeding as an unlawful detainer action until it resolved which party had a legal right to possession of the property. But Angelo contradicted itself by also arguing that Maged could not claim that he had a "legal right to possession" because he had "voluntarily abandoned" the leased property. CP at 53 (emphasis omitted), 59.

---

[12] CP at 36.

[13] 105 Wn.2d 39, 45-46, 711 P.2d 295 (1985).

[14] CP at 53.

¶13 Angelo further contended that (1) a trial court operating under unlawful detainer jurisdiction was not a court of "general jurisdiction"[15] and, under Washington case law, could hear a defendant's counterclaims and defenses only if these claims related to the parties' "dispute over possession"[16] or involved "facts which excuse[d] a tenant's breach";[17] (2) Maged's counterclaims, including his constructive eviction counterclaim, "ha[d] nothing to do with the right to possession"[18] of the property, which was the subject of its unlawful detainer action; (3) Maged's counterclaims did not involve facts that "excus[ed]"[19] Maged's breach of the 13 lease covenants specified in Angelo's notice to quit; and (4) thus, Maged's counterclaims exceeded the narrow scope of counterclaims permitted under a trial court's unlawful detainer jurisdiction and the trial court should not consider them.

## B. Trial Court's Retention of Unlawful Detainer Jurisdiction

¶14 On August 1, 2008, the trial court heard oral argument on Maged's motion (1) to covert the proceedings into an ordinary civil action, (2) to amend his answer, and (3) to add counterclaims for damages under the trial court's general subject matter jurisdiction. Maged repeatedly argued that possession was "no longer an issue" and, therefore, the trial court should convert the proceeding into an ordinary civil action for damages. I Report of Proceedings (RP) at 5. Specifically, he urged that the court not "fast track" the matter as an unlawful detainer action, under RCW 59.12.130, because he needed to conduct discovery for his counterclaims. I RP at 19.

---

[15] CP at 57.

[16] CP at 57.

[17] CP at 57 (quoting First Union Mgmt., Inc., 36 Wn. App. at 854).

[18] CP at 58.

[19] CP at 57 (quoting First Union Mgmt., Inc., 36 Wn. App. at 854).

¶15 Angelo continued to assert that, although Maged had surrendered *actual* possession of the property by returning his keys, he had not given up his *legal* right to possession[20] and, therefore, the court needed to hear the case as an unlawful detainer action. Angelo also expressed concern about its ability to re-let the property to another tenant. Maged responded by agreeing that he was "giving up possession" and that he would make "no further claim to the rest of the tenancy," but he still wanted to litigate in an ordinary contract lawsuit who had breached the lease. I RP at 4, 6. Maged did not object to Angelo's re-letting the property and stipulated on the record that he would "not mov[e] back [into the property u]nder any scenario." I RP at 21. The trial court classified Maged's "breach of lease" counterclaim as a counterclaim for "constructive eviction." I RP at 2.

¶16 The trial court decided to retain the proceeding as an unlawful detainer action because it determined that the right to legal possession was still at issue. Without citing a legal or factual basis for its ruling, the trial court allowed Maged to amend his answer to include his breach of lease/ constructive eviction counterclaim in the unlawful detainer proceeding because the constructive eviction counterclaim referred to the "lease terms." I RP at 17. The trial court did not, however, allow Maged to proceed with his two other counterclaims (unjust enrichment and interference with business expectancy), which the trial court did not believe had anything "to do with the lease terms." I RP at 17.

¶17 On August 15, Maged and Angelo returned to the trial court to resolve their "dueling orders" from the August 1 hearing. II RP at 1. The parties reargued whether the trial court should retain unlawful detainer jurisdiction or whether it should convert the action into an ordinary civil action. In particular, Maged argued that both the actual

---

[20] The record does not show that Maged ever claimed that he had a "legal right to possession" after he surrendered his keys to Angelo.

possession and legal possession issues had been resolved because he was not seeking to regain possession as a remedy for Angelo's alleged "breach of lease," or constructive eviction. II RP at 5. Instead, Maged asserted that he had made an "election of remedies" when he surrendered his keys and stipulated that he would not seek to recover possession of the property. II RP at 5. Maged strenuously argued that (1) in his constructive eviction counterclaim, he had chosen to seek *damages* rather than return of *possession* of the property; and (2) therefore, the trial court should convert the unlawful detainer action into an ordinary civil action.

¶18 The trial court reaffirmed its earlier ruling that the proceeding would remain an unlawful detainer action because, in its view, the right to "legal possession" of the property remained unresolved. CP at 102. At the end of the hearing, the trial court entered a written order allowing Maged to amend his answer to Angelo's unlawful detainer complaint by adding his constructive eviction counterclaim;[21] the trial court did not, however, allow Maged to add his counterclaims for unjust enrichment or interference with business expectancy. The trial court later explained in a written ruling that it was allowing Maged's constructive eviction counterclaim to proceed as part of the unlawful detainer action "so long as [it] refer[red] to the lease itself[,] e.g.[,] breach by the landlord."[22] CP at 259.

¶19 The trial court also entered written findings that Maged had "relinquished possession" of the property and that Maged did "not wish to re-take possession of the [property], even if successful in defending [against the unlawful detainer] lawsuit." CP at 101. And the trial court "authorized [Angelo] to take steps to re-let the [property]" to another tenant. CP at 102.

---

[21] Angelo did not answer Maged's constructive eviction counterclaim.

[22] The trial court later referred to the action as a "hybrid" between a typical unlawful detainer lawsuit and an ordinary civil trial. V RP at 29.

## C. Summary Judgment

¶20 On April 17, 2009, Angelo moved for summary judgment on both its unlawful detainer claim and Maged's constructive eviction counterclaim. Angelo argued the "undisputed facts" established that Maged had "abandoned" the lease before adjudication of the unlawful detainer action and, as a result, the unlawful detainer action was "moot" because "possession [was] no longer an issue."[23] CP at 66. Angelo claimed that, by abandoning the property, (1) Maged had breached the lease agreement[24] and, thus, no longer had a "right to possess" the property or to challenge whether Angelo had a legal basis for initiating its unlawful detainer action; and (2) Angelo was entitled to summary judgment on its unlawful detainer claim and Maged's constructive eviction counterclaim.[25] CP at 76.

¶21 In opposition to Angelo's summary judgment motion, Maged submitted a memorandum and an affidavit describing how he had complied with the notice to quit and how Angelo's unlawful detainer action was unfounded and harassing. Maged's affidavit asserted that (1) he or his employees had called the police on several occasions "to

---

[23] Angelo did not reiterate its earlier argument that the trial court needed to retain unlawful detainer jurisdiction because the "right to possession" was allegedly still at issue. Nor did Angelo address its earlier allegation in its notice to quit—that Maged had failed to cure the violations of the lease agreement and had continued to detain the property unlawfully.

[24] Angelo did not include this new "abandonment" theory in the list of breaches that it had originally asserted in its notice to quit a year earlier.

[25] Under Angelo's reasoning, the unlawful detainer action was "moot" because possession of the property was no longer at issue. CP at 66. Therefore, the trial court apparently had only one issue to decide: whether Maged's constructive eviction counterclaim failed under the summary judgment standard. Angelo argued that (1) Maged based his entire constructive eviction counterclaim on Angelo's having initiated an unlawful detainer lawsuit under chapter 59.12 RCW; and (2) because Angelo had followed the statutory procedures of chapter 59.12 RCW in initiating the unlawful detainer action, Maged's counterclaim should fail as a matter of law. Contrary to Angelo's assertion that the unlawful detainer action was moot, Angelo then sought, and the trial court awarded it, damages under the unlawful detainer statute.

control illegal or dangerous activities"; (2) customers, suppliers, and other tenants in the Cascade Village Center had told him (Maged) that Angelo "intended to evict [T]he Nile [n]ightclub"; and (3) he (Maged) had "surrendered the property" on July 1, 2008, thus losing substantial expected profits. CP at 120. The trial court struck as inadmissible hearsay Maged's assertion that he had heard from customers, suppliers, and tenants that Angelo "intended to evict [T]he Nile." CP at 120.

¶22 In his memorandum, Maged contended that Angelo's summary judgment motion introduced "some confusion" into the proceedings and asked the trial court to deny the motion on three alternative grounds. CP at 127. First, Maged argued that the trial court lacked subject matter jurisdiction because Angelo's original notice to quit listed Suite 21, not Maged's Suite 50, as the property at issue and, therefore, did not adequately put Maged on notice of a potential unlawful detainer lawsuit or invoke the court's statutory unlawful detainer jurisdiction. Second, given Angelo's concession that "possession [was] no longer an issue" and that the unlawful detainer action was "moot,"[26] Maged urged the trial court to convert the unlawful detainer action into an ordinary civil action for damages under the court's general subject matter jurisdiction. CP at 127. Third, Maged argued that Angelo had not put forth facts to prove its alleged lease violations, both in its original notice to quit and in its unlawful detainer complaint, because none of the alleged breaches had occurred *after* the 30-day notice-to-quit period expired on May 14, 2008.

¶23 The trial court noted that Maged had submitted no evidence contradicting Angelo's contentions that Maged had breached the lease by voluntarily abandoning the property. The record shows that Maged never contested the *fact* of his actual turning over possession of the property to Angelo a year earlier. The record also shows, however, that Maged

---

[26] CP at 66.

consistently contested Angelo's *legal* characterization of this relinquishment as "voluntary" and as a "breach" of the lease agreement. When Maged expressed confusion about which party had the burden of proof in an unlawful detainer summary judgment, the trial court granted him leave to file a supplemental memorandum on the narrow issue of whether a party opposing a summary judgment motion may rest on its pleadings to assert a genuine issue of material fact.[27] The trial court explicitly stated, however, that it would not consider additional "evidence." III RP at 59.

¶24 Instead of submitting a supplemental memorandum on this discrete legal issue, Maged submitted another memorandum, again asserting that (1) Angelo had not submitted factual evidence demonstrating that, *after* May 14, 2008, Maged had continued to violate the 13 lease covenants specified in Angelo's notice to quit; and (2) thus, had not proved that Maged had unlawfully detained the property. Maged also submitted a supplemental affidavit alleging racial harassment by one of Angelo's other tenants, which the trial court struck as untimely.

¶25 For the first time, on May 15, 2009, the trial court announced that it had "converted" the unlawful detainer action into an ordinary civil action under *Munden* because unlawful detainer actions were about "possession" and it had already determined that "possession [was] not at issue." III RP at 58, 61. The trial court ruled that Maged had not sufficiently rebutted Angelo's claim that Maged had "breached the lease" by having voluntarily "abandoned" the

---

[27] The record is not clear about the issues the trial court decided on summary judgment; nevertheless, it appears that the trial court expected Maged to offer affidavits creating a genuine issue of material fact about whether he had unlawfully detained the property and had breached the lease by "abandoning" it. As we explain later in this opinion, however, Angelo had not listed "abandonment" as one of the lease violations in its April 14 notice to quit, which notice had begun the statutory unlawful detainer action. Thus, "abandonment" does not appear to have been one of the legal grounds on which Angelo could seek to hold Maged liable for unlawful detainer or one of the issues that the trial court could decide while presiding over the case as an unlawful detainer action.

property; apparently, in the trial court's view, this "abandonment" also constituted a lease violation that triggered chapter 59.12 RCW, the unlawful detainer statute.[28] *See* III RP at 50-55.

¶26 On June 4, 2009, the trial court reiterated its position in a letter ruling and entered an order granting Angelo's summary judgment motion in its entirety.[29] The trial court concluded that Maged had unlawfully detained the property for one month,[30] from June 1, 2008, to July 1, 2008, and had thereby "materially breached" the lease. CP at 189. The trial court also purportedly "terminated" Maged's tenancy as of June 4, 2009, dismissed with prejudice Maged's constructive eviction counterclaim, and awarded Angelo attorney fees under the lease agreement. CP at 189.

## D. Post-Summary-Judgment Rulings

¶27 On September 9, 2009, Maged filed a motion for revision under CR 54(b), asking the trial court to reconsider

---

[28] The trial court did not, however, address (1) Maged's counterargument that summary judgment was improper on this "abandonment" ground because vacating the property was a necessary element of his constructive eviction counterclaim (*see Brine v. Bergstrom*, 4 Wn. App. 288, 289, 480 P.2d 783 (1971)); or (2) how the trial court could find Maged liable for unlawful detainer based on "abandonment" when Angelo had not listed "abandonment" as one of the 13 breached lease covenants in its April 14, 2008 notice to quit or as a claim in its May 30, 2008 unlawful detainer complaint.

[29] In its June 4, 2009 letter ruling, the trial court also stated that it based its summary judgment ruling on the fact that Maged did not introduce affidavit evidence to rebut the lease violations Angelo alleged in its notice to quit. But Angelo did not mention the notice to quit violations in its summary judgment motion. Instead, Angelo argued only that Maged had breached the lease by "abandoning" the premises. Angelo also *conceded* that the unlawful detainer action was "moot" because possession was no longer at issue. CP at 66. It thus appears that the trial court should have determined that the 13 lease violations alleged in Angelo's notice to quit were *not* at issue on summary judgment.

[30] Despite the trial court's determination that Maged had unlawfully detained the property for one month, it appears that the trial court actually awarded Angelo damages for Maged's having retained a "legal [right to] possession" from June 1, 2008, to June 4, 2009. CP at 351. Angelo also argued to the trial court that it *could* have sought double damages for this period under the unlawful detainer statute because Maged did not "vacate" the leased property until June 4, 2009. CP at 305 n.13.

its summary judgment rulings. Maged submitted an additional affidavit, which further described his counterclaims. After the trial court heard oral argument, but before it issued an order, Maged submitted another affidavit to provide additional support for his constructive eviction counterclaim. The trial court denied Maged's CR 54(b) motion and struck both affidavits as attempting to introduce "new evidence" into the record, which it stated CR 54(b) did not allow. CP at 285-86.

¶28 Two months later, however, on November 2, the trial court issued a new letter ruling, reversing itself and stating that it had *not* "converted" the unlawful detainer lawsuit into an ordinary civil action and that its earlier pronouncements on this point were erroneous. CP at 260. The trial court also announced that the issue it had resolved on summary judgment was "who breached the lease." CP at 260.

## E. Final Order and Judgment

¶29 On May 14, 2010, the trial court entered a final order and judgment. Under RCW 59.12.170, the trial court awarded Angelo $11,120.00 in double rent damages for the month that Maged had allegedly "unlawfully detained"[31] the property from June 1, 2008, to June 30, 2008. CP at 351. The trial court also concluded that the "legal . . . right to possession" of the property had remained unresolved until it judicially terminated Maged's tenancy on June 4, 2009. Therefore, the trial court awarded Angelo an additional

---

[31] The trial court's final order and judgment appears to have based Maged's "unlawful detainer" period on his alleged "failure to pay rent." CP at 351. The record shows, however, that Maged paid his June 2008 rent into the court registry on June 17, 2008. Moreover, Angelo had not alleged Maged's failure to pay rent as a basis for seeking unlawful detainer damages in its notice to quit or in its unlawful detainer complaint. Nor have the parties argued on appeal that failure to pay rent was a basis for the unlawful detainer. Thus, this portion of the trial court's order does not appear to be supported by the record before us on appeal.

$70,473.00[32] in nondoubled rent damages from July 1, 2008, to June 4, 2009,[33] despite Maged's claim that he had surrendered all ties to the property on July 1, 2008, and the trial court's having granted Angelo authority to re-let the property to another tenant on August 15, 2008. CP at 351. The trial court also awarded Angelo attorney fees, miscellaneous fees, and costs. The final judgment against Maged totaled $134,876.05, with 12 percent interest.

¶30 Maged appeals all of the trial court's orders, rulings, and factual determinations after its initial decision to retain unlawful detainer jurisdiction on August 15, 2008, including its June 4, 2009 summary judgment order and its May 14, 2010 final order and judgment.

## ANALYSIS

### I. SUBJECT MATTER JURISDICTION

¶31 Maged argues that the trial court lacked subject matter jurisdiction to continue hearing this case as an unlawful detainer action after (1) he relinquished physical possession of the property to Angelo; (2) he made an "election of remedies," disclaiming any theoretical right to restored possession as a remedy for his counterclaim; and

---

[32] In its final order and judgment, the trial court awarded Angelo $96,528.55 for "[u]npaid [r]ent, [f]ees, and [p]re-[j]udgment [i]nterest." CP at 350. But it subtracted $6,950.00 from this figure because Maged had paid "the last month's rent" (presumably June 2008), resulting in a net award of $89,578.55 for unpaid rent, fees, and prejudgment interest. CP at 350-51.

[33] Although the trial court stated that the damages for this period were not doubled under RCW 59.12.170 (the unlawful detainer statute), it suggested that it could have doubled such damages under the statute, but that it had chosen not to because Angelo had "elected" *not* to seek a double-damages award. CP at 351. Although its final order and judgment is unclear, it appears that, consistent with Angelo's argument, the trial court believed that its judicial termination of the lease on June 4, 2009, had "concluded" Maged's unlawful detainer period. *See* CP at 305 n.13; VIII RP at 9-10 (Angelo stated it was not seeking double damages under RCW 59.12.170 but that case law clearly "support[ed]" such award); VIII VRP at 18 (Angelo stated, "I think . . . the termination of the tenancy on June 4th, 2009 would conclude the [u]lawful [d]etainer. And then going forth from June 4, 2009[,] it would be [b]reach of [c]ontract damages.").

(3) the trial court ordered that Angelo could re-let the property to another tenant.[34] Br. of Appellant at 35 (quoting II RP at 5). We agree.

## A. Standard of Review

¶32 Whether a trial court had subject matter jurisdiction over a controversy is a question of law, which we review de novo. *Young v. Clark*, 149 Wn.2d 130, 132, 65 P.3d 1192 (2003). Parties cannot confer subject matter jurisdiction on the court by agreement between themselves; a court either has subject matter jurisdiction or it does not. *In re Marriage of Furrow*, 115 Wn. App. 661, 667, 63 P.3d 821 (2003). Lack of subject matter jurisdiction renders a trial court powerless to decide the merits of the case. *Skagit Surveyors & Eng'rs, LLC v. Friends of Skagit County*, 135 Wn.2d 542, 556, 958 P.2d 962 (1998). A judgment entered by a court lacking subject matter jurisdiction is void; and a party may challenge such judgment at any time. *Cole v. Harveyland LLC*, 163 Wn. App. 199, 205, 258 P.3d 70 (2011).

## B. Unlawful Detainer Actions Generally

¶33 An unlawful detainer action under RCW 59.12.030 is a summary proceeding designed to facilitate the recovery of possession of leased property; the primary issue for the trial court to resolve is the "right to possession" as between a landlord and a tenant. *Port of Longview v. Int'l Raw Materials, Ltd.*, 96 Wn. App. 431, 436, 979 P.2d 917 (1999); *see also Munden*, 105 Wn.2d at 45. It is well settled in Washington that,

> [i]n an unlawful detainer action, the court sits as a special statutory tribunal to summarily decide the issues authorized

---

[34] Angelo responds that (1) the trial court had subject matter jurisdiction to hear the case under either its statutory unlawful detainer jurisdiction or its general jurisdiction conferred by the state constitution; and (2) if the trial court erroneously ruled on a jurisdictional issue, Maged "invited" the error. Br. of Resp't at 18.

by statute and *not* as a court of general jurisdiction with the power to hear and determine other issues.

*Granat v. Keasler*, 99 Wn.2d 564, 571, 663 P.2d 830, *cert. denied*, 464 U.S. 1018 (1983). Thus, an unlawful detainer action is a "narrow one, limited to the question of possession and related issues such as restitution of the premises and rent." *Munden*, 105 Wn.2d at 45.

■ ¶34  If, however, an issue is not incident to the right to possession, the trial court must hear the issue in a general civil action. *Kessler v. Nielsen*, 3 Wn. App. 120, 123-24, 472 P.2d 616 (1970). In other words, although a superior court is normally a court of general jurisdiction and it may resolve most civil claims, when the superior court hears an unlawful detainer action under RCW 59.12.030, it sits in a statutorily limited capacity and lacks authority to resolve issues outside the scope of the unlawful detainer statute. *See Sprincin King St. Partners v. Sound Conditioning Club, Inc.*, 84 Wn. App. 56, 66-68, 925 P.2d 217 (1996); *First Union Mgmt., Inc. v. Slack*, 36 Wn. App. 849, 853-55, 679 P.2d 936 (1984).

¶35  Angelo's inconsistent positions below and on appeal have oversimplified Maged's jurisdictional argument and have injected distractions into this case. We recognize that Maged does *not* argue that the trial court lacked *general* subject matter jurisdiction over his counterclaims, including his constructive eviction counterclaim, or that the trial court lacked *statutory* unlawful detainer jurisdiction over Angelo's original unlawful detainer action. Instead, Maged's jurisdictional argument comprises two main points: First, Maged argues that his constructive eviction counterclaim involved issues beyond the "right to possession" of the property and other related subjects that a trial court may address under its statutory unlawful detainer jurisdiction.[35] Second,

---

[35] Thus, as Maged argues, *if* the trial court had determined that the right to possess the property remained at issue and that the proceeding, therefore, needed to remain classified as an unlawful detainer action, it should not have asserted

Maged asserts that the "right to possession" of the property did *not* remain at issue; instead, it was *resolved* no later than August 15, 2008, by which date he had relinquished all of his possessory rights back to Angelo[36] and, therefore, the trial court's unlawful detainer jurisdiction over the case ended.

¶36 Maged further argues that, because the right to possession of the property (both actual and legal) had been fully resolved by August 15, 2008, after that date (1) the trial court lacked subject matter jurisdiction under RCW 59.12.030 to hear any further proceedings under its statutory unlawful detainer authority; (2) therefore, the trial court had no authority to rule on the merits of any remaining claims without first converting the proceeding into an ordinary civil damages action; and (3) because the trial court did *not* convert the case into an ordinary civil action and instead continued to preside over the case as an "[u]nlawful [d]etainer"[37] action, the trial court lacked authority to rule on Angelo's summary judgment motion, to rule on Maged's constructive eviction counterclaim, or to issue any further orders, rulings, and factual determinations in the case. We agree.

---

jurisdiction over the construction eviction counterclaim until it resolved the parties' unlawful detainer lawsuit.

[36] Maged lists the following evidence to support this assertion: As of August 15, 2008, (1) he had returned his keys to Angelo and had surrendered actual possession of the property; (2) he had not requested reinstatement in the property in the prayer of relief section of his proposed amended answer and counterclaim; (3) he had made an "election of remedies" by stipulating that he would not move back onto the property "under any scenario" and by stating on the record that he would not seek to regain possession if he prevailed in his constructive eviction counterclaim, Br. of Appellant at 34, 35 (quoting II RP at 5); and (4) the trial court had ordered that Angelo could re-let the property to another tenant, in essence restoring to Angelo any lingering "legal right to possess[ion]" that Maged might have had under the lease as a remedy for his constructive eviction counterclaim, Br. of Appellant at 38.

[37] *See* CP at 260 (trial court stated it had not converted the unlawful detainer into an ordinary civil action when it ruled on Angelo's summary judgment motion).

## C. No Unlawful Detainer Subject Matter Jurisdiction over Counterclaim

¶37 First, Maged contends that, in considering his constructive eviction counterclaim, the trial court exceeded its subject matter jurisdiction for unlawful detainer proceedings because his counterclaim was *not* " 'based on facts which would excuse a tenant's breach,' " a necessary prerequisite for the trial court's assumption of subject matter jurisdiction over counterclaims in the unlawful detainer context. Br. of Appellant at 45 (quoting *Munden*, 105 Wn.2d at 45).[38] To protect unlawful detainer's summary nature, Washington courts have generally not allowed parties to raise other claims, including counterclaims, when the trial court determines in an unlawful detainer action who is entitled to possess the property at issue. *Munden*, 105 Wn.2d at 45; *Kessler*, 3 Wn. App. at 123-24. In *Munden*, our Supreme Court recognized an exception exists for counterclaims " 'based on facts which excuse a tenant's breach,' "[39] citing as permissible examples, breach of the implied warranty of habitability and breach of the covenant of quiet enjoyment. *Munden*, 105 Wn.2d at 45 (quoting *First Union Mgmt., Inc.*, 36 Wn. App. at 854 and citing *Foisy v. Wyman*,

---

[38] The same rules apply to residential leases under chapter 59.18 RCW, the Residential Landlord-Tenant Act of 1973. *See Phillips v. Hardwick*, 29 Wn. App. 382, 385-86, 628 P.2d 506 (1981):

> Unlawful detainer actions under RCW 59.18 are special statutory proceedings with the limited purpose of hastening recovery of possession of rental property, and the superior court's jurisdiction in such action is limited to the primary issue of the right of possession, plus incidental issues such as restitution and rent, or damages. *Any issue not incident to the right of possession within the specific terms of RCW 59.18 must be raised in an ordinary civil action.*

(Emphasis added.)

[39] We have phrased this rule slightly differently in two cases. *See First Union Mgmt., Inc.*, 36 Wn. App. at 854 (test for determining whether trial court has subject matter jurisdiction over counterclaim in unlawful detainer action is whether "resolution of the [tenant's] damage claim is . . . necessary to determine the right of possession"); *see also Int'l Raw Materials, Ltd.*, 96 Wn. App. at 438 (in unlawful detainer action, trial court may resolve any issues necessarily related to the parties' dispute over possession of the property).

83 Wn.2d 22, 515 P.2d 160 (1973); *Income Props. Inv. Corp. v. Trefethen*, 155 Wash. 493, 284 P. 782 (1930)).

¶38 Angelo asserts that the trial court had unlawful detainer jurisdiction over Maged's constructive eviction counterclaim because (1) once again, the "right to possession" of the property remained at issue; and (2) Maged's counterclaim had originally alleged Angelo's "[constructive] eviction" and breach of "quiet enjoyment." Br. of Resp't at 21. These arguments fail because they misapply the rule that our Supreme Court announced in *Munden*. We also find Angelo's argument unpersuasive because it makes no attempt to harmonize its assertions on appeal with its concessions below on summary judgment that the unlawful detainer action was "moot" *because* "possession [was] *no longer an issue*." CP at 66 (emphasis added).

¶39 Contrary to Angelo's argument on appeal, *Munden* did *not* hold that a trial court vested with unlawful detainer jurisdiction may entertain *all* counterclaims involving a landlord's alleged breach of the implied warranty of habitability or the covenant of quiet enjoyment. Rather, *Munden* allows a trial court to hear such counterclaims *only* if they are " 'based on facts which excuse a tenant's breach' "[40] and the tenant continues to assert a right to possess the property. *Munden*, 105 Wn.2d at 45 (quoting *First Union Mgmt., Inc.*, 36 Wn. App. at 854).

¶40 We note that *Foisy* and *Trefethen*, the cases that *Munden* cited when announcing this rule, both involved tenants who successfully defended against their landlords' unlawful detainer actions for *failing to pay rent* by showing that the landlords had breached the implied warranty of habitability or the covenant of quiet enjoyment, thus ab-

---

[40] The trial court applied the wrong legal rule when it fashioned a "hybrid" unlawful detainer proceeding in which it attempted to assume jurisdiction over Maged's constructive eviction counterclaim, based on its assumption that the counterclaim allegedly "referred to the lease itself[,] e.g.[,] breach by the landlord." CP at 259; *see also* I RP at 21; V RP at 29.

solving the tenants of their duty to pay rent.[41] *See Foisy*, 83 Wn.2d at 31-32; *Trefethen*, 155 Wash. at 502-03, 508-09. The tenants thereby relieved of their rent obligations would not have been in "unlawful detainer" for failing to pay rent and thus could rightfully remain in possession of the leased property. Accordingly, the *Foisy* and *Trefethen* tenants' counterclaims to their landlords' unlawful detainer actions were based on facts which excused the tenants' breaches; and thus, the trial courts could properly hear the counterclaims under chapter 59.12 RCW as part of the unlawful detainer proceedings.

¶41 The Supreme Court applied this principle to the facts in *Munden* when it held that the tenants' counterclaim for automobile damages caused by a rockslide and mudslide on their property was *not* based on facts that excused their "breaches" for failure to pay rent, unlike the situations in *Foisy* and *Trefethen*. *Munden*, 105 Wn.2d at 45. Thus, in *Munden*, the Supreme Court reaffirmed its earlier holdings and held that, under the "general rule" against counterclaims and its "exception," the tenants' damages counterclaim was "*not* assertible"[42] in the unlawful detainer action because it was not based on facts that

---

[41] A tenant need not pay rent if a landlord breaches the warranty of habitability, which applies to residential leases, or if the landlord constructively evicts a tenant by breaching the covenant of quiet enjoyment. *See Foisy*, 83 Wn.2d at 24, 27-28; *Esmieu v. Hsieh*, 20 Wn. App. 455, 460-61, 580 P.2d 1105 (1978), *aff'd*, 92 Wn.2d 530 (1979).

[42] We note that in *Munden*, the trial court had dismissed the tenants' counterclaim *without prejudice. Munden*, 105 Wn.2d at 42.

excused the tenants' breaches for failure to pay rent.[43] *Munden*, 105 Wn.2d at 45 (emphasis added).[44]

¶42 *Munden's* "general rule" and "exception" are best understood in the context of the unlawful detainer statute as a whole. RCW 59.12.030 defines seven statutory bases, or "breaches,"[45] under which a landlord may pursue an unlawful detainer action against a tenant, including a tenant's failure to pay rent and a tenant's breach of lease covenants. RCW 59.12.030(3)-(4). Because a landlord may have varying grounds for pursuing an unlawful detainer action, a court applying the *Munden* test should (1) first look at the underlying basis for the landlord's unlawful detainer action by examining the landlord's notice to quit and its unlawful detainer complaint, and (2) then ask

---

[43] Other courts have reached similar conclusions. *See First Union Mgmt., Inc.*, 36 Wn. App. at 854 (trial court in unlawful detainer action lacked subject matter jurisdiction to hear tenants' counterclaim that landlord did not timely respond to their request to assign the property because landlord's untimely response did not excuse the tenants' breach); *Sprincin King St.*, 84 Wn. App. at 68 (tenant's counterclaim for poorly lit common areas stated a claim for relief under the court's general jurisdiction, but it was not based on facts which would excuse the tenant's breach and not properly before the court in unlawful detainer action).

[44] Leaving this "general rule" intact, the Supreme Court decided the case on other grounds, holding that a trial court *may* convert an unlawful detainer action into an ordinary civil action for damages if right to possession ceases to be at issue at any time between the filing and the trial of the unlawful detainer action. *Munden*, 105 Wn.2d at 45-46.

[45] In our view, these seven statutory bases are the "breaches" to which the Supreme Court referred when it announced its *Munden* rule that counterclaims are allowed in an unlawful detainer proceeding *if* " 'based on facts which excuse a tenant's breach.' " *Munden*, 105 Wn.2d at 45 (quoting *First Union Mgmt., Inc.*, 36 Wn. App. at 854). Although the legislature last amended RCW 59.12.030 in 1998 to include the seventh statutory basis for initiating an unlawful detainer action, as early as 1890 the statute provided separate grounds for bringing an unlawful detainer action for a tenant's failure to pay rent and for a tenant's breach of lease covenants. *See* LAWS OF 1998, ch. 276 § 6; LAWS OF 1890, ch. 5 § 3.

Our conclusion that *Munden's* use of the word "breach" refers to the statutory bases for bringing an unlawful detainer claim is consistent with our Supreme Court's statement that three things must happen before a tenant is liable for unlawful detainer under the statute: (1) There must exist a "breach" or "breaches" of the covenants of the lease; (2) the landlord must notify the tenant of the existence of such "breach" or "breaches" and give him time to correct them as required by statute; and (3) the tenant must fail or neglect to correct such "breach" or "breaches." *Wilson v. Daniels*, 31 Wn.2d 633, 643, 198 P.2d 496 (1948).

whether a tenant's counterclaim is based on facts that may "excuse" the tenant's breach alleged by the landlord. If the answer to the second inquiry is "yes," then the trial court may properly hear the counterclaim in an unlawful detainer proceeding. But if the answer to the second inquiry is "no," then the trial court may not address the counterclaim without first converting the unlawful detainer action into an ordinary civil action for damages.[46]

¶43 Angelo served its notice to quit and filed its unlawful detainer complaint under RCW 59.12.030(4)-(5), alleging that Maged had breached 13 covenants in the parties' lease agreement, but not alleging that he had failed to pay rent. These alleged "breaches" formed the basis for the trial court's subsequent unlawful detainer action when Angelo asserted that Maged had failed to cure the lease violations or to vacate the property within 30 days of the notice to quit. The covenants that Angelo asserted Maged had breached related to (1) Maged's alleged use of the property for unlawful activities, including selling alcohol to minors and to intoxicated persons, permitting disorderly and lewd conduct, and permitting patrons to engage in criminal assaults and unruly behavior on the property; and (2) Maged's alleged interfering with the rights of other tenants, committing waste, failing to keep the property in good repair, and overburdening the parking area.

¶44 Unlike the *Foisy* and *Trefethen* tenants, however, Maged's counterclaim that Angelo had constructively evicted him, or had interfered with his right to quiet enjoyment of the property, could *not* have excused his duty to comply with these lease covenants. Therefore, Maged's constructive eviction counterclaim did not fall within the narrow scope of counterclaims that he could assert in an unlawful detainer action under *Munden*'s "general rule"

---

[46] In *Munden*, our Supreme Court also announced a second, "collateral" rule—that an unlawful detainer proceeding may be "converted" into an ordinary civil action when the right to possession is no longer at issue. *Munden*, 105 Wn.2d at 45-46. We discuss this "collateral" rule in the next section of this opinion.

and "exception."[47] We hold, therefore, that, under *Munden*, the trial court here lacked subject matter jurisdiction to consider Maged's counterclaim while exercising its limited-in-scope unlawful detainer jurisdiction.

### D. Maged's Counterclaim Required "Conversion" to Civil Action

¶45 In addition to reaffirming the "general rule" and "exception" that counterclaims are not allowed in unlawful detainer proceedings unless " 'based on facts which excuse a tenant's breach,' "[48] the *Munden* court announced a "collateral" rule that bears on the case before us here:

> We create today not another exception, but a rule which is collateral to the general rule: Where the *right to possession ceases to be at issue* at any time between the commencement of an unlawful detainer action and trial of that action, the proceeding *may be converted* into an ordinary civil suit for damages, and the parties may *then* properly assert any cross claims, counterclaims, and affirmative defenses.

*Munden*, 105 Wn.2d at 45-46 (emphasis added). In other words, where a tenant's actions amount to "relinquishment of [his] right to possession," the trial court may convert the unlawful detainer proceeding into an ordinary civil action

---

[47] Angelo inconsistently argued in its memorandum for the August 1, 2008 hearing *both* that the trial court needed to hear the case as an unlawful detainer proceeding and that the trial court *lacked authority* to hear any of Maged's counterclaims because they had "nothing to do with the right to possession," CP at 57, and were not " 'based on facts which excuse a tenant's breach.' " CP at 57 (quoting *First Union Mgmt., Inc.*, 36 Wn. App. at 854). Without addressing this inconsistency below, Angelo now argues on appeal that Maged's counterclaim fell squarely within *Munden*'s parameters. As we have previously explained, Angelo's reliance on *Munden* is misplaced. Furthermore, in our view, Angelo's statements in its July 30 hearing memorandum below operated as an admission that the trial court *lacked* unlawful detainer jurisdiction over Maged's constructive eviction counterclaim, consistent with Angelo's second position in this same memorandum. *See* CP at 57-58.

[48] *Munden*, 105 Wn.2d at 45 (quoting *First Union Mgmt., Inc.*, 36 Wn. App. at 854).

and *then* properly consider any of the tenant's counter-claims, including those that are not based on facts excusing the tenant's alleged breach.[49] *Munden*, 105 Wn.2d at 45-47.

¶46 The *Munden* tenants voluntarily vacated their leased property after their landlord initiated an unlawful detainer action against them but before trial; they also submitted an affidavit stating that their tenancy was terminated. *Munden*, 105 Wn.2d at 47. Our Supreme Court held that these actions amounted to the tenants' "relinquishment" of their right to possession, and in such circumstances, a trial court may convert the unlawful detainer into an ordinary civil action for damages because the purpose of the accelerated unlawful detainer proceedings was complete. *Munden*, 105 Wn.2d at 46-47.

¶47 Like the tenants in *Munden*, Maged vacated the property after Angelo filed its unlawful detainer action. As we discuss in the next section, he also sufficiently "relin-

[49] Maged also appears to argue that we should hold that under *Munden*, once the right to possession ceases to be an issue, the trial court's unlawful detainer jurisdiction ceases to exist as well and the trial court *must* convert the unlawful detainer proceeding into an ordinary civil action for damages. *See* Br. of Appellant at 31. Arguably, Maged's conclusion flows from *Munden*'s premise that an unlawful detainer action is a "summary proceeding" for the purpose of determining the "right [to] possession" of property as between a landlord and a tenant. *Munden*, 105 Wn.2d at 45. Thus, as Maged argues, it appears that there would be little, if anything, left for the trial court to decide in an unlawful detainer proceeding after it has conclusively resolved the right to possession. Although we generally agree with this latter argument about there being nothing more to resolve in the unlawful detainer action, we do not agree with Maged that we should extend *Munden* farther than the Supreme Court expressly held or apparently intended by interpreting *Munden* to *require* the trial court to convert a later-mooted unlawful detainer action into a general civil damages action.

On the contrary, we are constrained by *Munden*'s articulation of its apparently *permissive* "collateral" rule. In announcing this collateral rule, the Supreme Court specifically stated that a trial court "*may*" convert an unlawful detainer action into an ordinary civil action for damages when the right to possession is no longer at issue. *Munden*, 105 Wn.2d at 45-46 (emphasis added). Use of the permissive "may" suggests that a trial court retains some discretion in choosing whether and when to convert the unlawful detainer action into an ordinary civil damages action. For example, presumably, a trial court could also *dismiss* an unlawful detainer action when, as here, the right to possession became "moot" before trial commenced to resolve the unlawful detainer claim. Accordingly, we decline Maged's request to hold that *Munden required* the trial court to convert Maged's unlawful detainer action into a civil action for damages and, therefore, erred in failing to do so.

quished" his right to possession of the property and, in essence, stipulated that his tenancy was terminated. CP at 101. In our view, there is virtually no distinction between Maged's affirmative surrendering of his right to possession of the property to Angelo and the *Munden* tenants' more passive relinquishing of their possession. Therefore, under *Munden*'s "collateral" rule, the trial court could have "converted" Angelo's unlawful detainer action into an ordinary civil action and then properly asserted its general subject matter jurisdiction over Maged's constructive eviction counterclaim. *Munden*, 105 Wn.2d at 45-46. Noting, however, the trial court's express statement that it did *not* covert the unlawful detainer action into an ordinary civil action before it purported to assume jurisdiction over Maged's constructive eviction counterclaim, we hold that the trial court lacked subject matter jurisdiction over this counterclaim under the "collateral" rule announced in *Munden*, in addition to lacking subject matter jurisdiction under *Munden*'s "general rule" and "exception" discussed above.

### E. Legal Right to Possession Restored to Angelo by August 15, 2008

¶48 In his second jurisdictional challenge, Maged argues that the trial court erred in concluding that the " '*legal* possession to the [property was] not yet resolved' " when it granted him leave to amend his answer to add his constructive eviction counterclaim on August 15, 2008. Br. of Appellant at 34 (emphasis added) (quoting CP at 102 (the trial court's August 15 order)). Maged contends that by August 15, (1) he had taken all of the necessary steps to return *actual* and *legal* possession of the property to Angelo; (2) if there was a question about any remaining "legal right to possession"[50] under the lease, the trial court had "definitively resolved"[51] this issue when it ordered that Angelo

---

[50] Br. of Appellant at 33.

[51] Br. of Appellant at 39.

could re-let the property to another tenant; and (3) because the right to possession had been fully resolved, the trial court had exhausted its limited subject matter jurisdiction under the unlawful detainer statute and, thus, "lacked subject matter jurisdiction" to rule on any further proceedings, at least while it exercised its *unlawful detainer* jurisdiction." Br. of Appellant at 40 (emphasis added). Thus, Maged claims, this lack of subject matter jurisdiction requires us to vacate all of the trial court's orders, rulings, and factual determinations after August 15 and to remand the case for trial in an ordinary civil action.[52] We agree.

¶49 The record here shows that the trial court had fully resolved the legal right to possession of the property by August 15 when it entered its order granting Maged leave to amend his answer to add his constructive eviction counterclaim. By this date, Maged had (1) physically vacated the property and removed "[e]verything of value,"[53] (2) announced that he "wished to return" the property to Angelo,[54] (3) surrendered his keys to Angelo, (4) made no attempt to reenter the property, (5) represented to the trial court that he had "surrendered possession" of the property

---

[52] Angelo responds that (1) the right to possession remained "at issue" until the trial court granted summary judgment on June 4, 2009, for Angelo's unlawful detainer claim and Maged's counterclaim, because Maged "was still asserting he had a property interest in the premises"; and (2) the trial court had subject matter jurisdiction over the proceeding either under its statutory unlawful detainer jurisdiction or under its general subject matter jurisdiction conferred by the Washington Constitution. Br. of Resp't at 19-20. Contrary to RAP 10.3(b), Angelo cites no authority to support its apparent contentions that (1) a trial court may exercise its narrow statutory unlawful detainer jurisdiction and its general subject matter jurisdiction simultaneously; and (2) the trial court may somehow convert a statutory unlawful detainer action into a general civil action either without full disclosure to the parties or, as here, by expressly announcing to the parties that it had *not* converted the proceedings from an unlawful detainer into a general civil action. *See* Br. of Resp't at 22 (claiming that trial court had general subject matter jurisdiction over the proceedings under *Munden*, apparently because it *could convert* the unlawful detainer proceedings into an ordinary civil action). Without citation to relevant legal authority, we do not further consider these arguments; therefore, we address only the remaining issue of whether legal possession of the property was resolved by August 15, as Maged asserts.

[53] CP at 47.

[54] CP at 47.

to Angelo,[55] (6) agreed that he would make "no further claim to the rest of the tenancy,"[56] (7) did not object to Angelo's re-letting the property to another tenant, (8) stipulated that he would not move back to the property "[u]nder any scenario,"[57] (9) argued that actual possession and legal possession issues were resolved, (10) claimed he had made an "election of remedies" and was not seeking repossession of the property,[58] and (11) did not seek to be restored with possession of the property in the prayer for relief section of his proposed amended answer and counterclaim.[59]

---

[55] CP at 37.

[56] I RP at 6.

[57] I RP at 21.

[58] II RP at 5.

[59] Angelo does not dispute that (1) Maged had returned his keys and surrendered physical possession of the property, (2) Maged had stipulated that he would not move back into the property " 'under any scenario' " and " '[did] not wish to re-take possession' " if successful in his counterclaim, or (3) the trial court had granted Angelo authority to re-let the property to another tenant. CP at 76 (quoting CP at 116, 102). On the contrary, Angelo relied below on these same facts in arguing on summary judgment that the unlawful detainer was "moot" because the right to possession was *not* at issue. CP at 66.

Nevertheless, Angelo relies on *Housing Authority v. Pleasant* to assert that a tenant's "right to possession" remains "at issue" even after the tenant surrenders possession of the leased property to the landlord. Br. of Resp't at 20 (citing *Hous. Auth. v. Pleasant*, 126 Wn. App. 382, 388, 109 P.3d 422 (2005)). This reliance is misguided because, unlike Maged, the *Pleasant* tenant was seeking *reinstatement* in her leased property. The *Pleasant* tenant surrendered possession of the leased premises only after the trial court issued a writ of restitution for the premises and the sheriff served on her a notice to terminate (leave the premises) or to face a forceful eviction. *Pleasant*, 126 Wn. App. at 387. To comply with the court order, the tenant vacated her leased premises, but she then filed an appeal seeking to regain possession. *Pleasant*, 126 Wn. App. at 387. On appeal, the landlord argued that the unlawful detainer action was "moot" because the tenant no longer had possession of the premises. *Pleasant*, 126 Wn. App. at 387. Division Three of our court rejected the landlord's mootness argument because the tenant was still contesting her right to possession, and she affirmatively sought reinstatement in the premises. *Pleasant*, 126 Wn. App. at 388-89.

In contrast, Maged did not seek reinstatement in the property as a remedy for his counterclaim, a fact that the trial court appears to have recognized when it ordered that Angelo could re-let the property to another tenant. Thus, contrary to Angelo's assertion, *Pleasant* does not require us to hold that the "right to

¶50 Based on these assertions, the trial court entered an order at the end of the parties' hearing on August 15 (1) finding that Maged had "relinquished possession" of the property and that he "[did] not wish to re-take possession" even if successful in his lawsuit, (2) ordering that Angelo could "take steps" to re-let the property to another tenant, and (3) concluding that the "legal possession" of the property remained at issue. CP at 101-02. The record does not state whether Angelo ever re-let the property to another tenant, but Angelo claimed to have made "whole-hearted attempts" to re-lease the property after the trial court's August 15 order. VIII RP at 9. In our view, it is immaterial whether another tenant ever took actual physical possession of the property formerly leased to Maged. By granting Angelo *authority* to re-let the property to another tenant, the trial court effectively restored any remaining legal possessory rights in the property to Angelo.[60] In sum, the record does not support the trial court's ruling that legal possession remained unresolved as of August 15, 2008, when it granted Angelo authority to re-let the property to another tenant.[61]

¶51 Maged's return to Angelo of both actual and legal possession of the property resolved the "right to possession" and extinguished the trial court's narrow subject matter jurisdiction conferred by the unlawful detainer statute; therefore, the trial court lacked authority to issue any

---

possession" remained at issue after Maged relinquished *actual* possession of the property and the trial court restored any lingering *legal* possession to Angelo.

[60] Angelo would have needed both actual and legal possession in order to convey such rights to a new tenant. *See* 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 6.29, at 350 (2d ed. 2004) ("In every leasing there is implied a covenant that the landlord has the legal power to create the intended leasehold estate."); *Draper Mach. Works, Inc. v. Hagberg*, 34 Wn. App. 483, 486, 663 P.2d 141 (1983) ("Implied in every lease is a covenant to deliver possession to the tenant.").

[61] We note that, even if the trial court did not intend to do so, it restored legal possession to Angelo at the end of the parties' August 15, 2008 hearing when it granted Angelo authority to re-let the property, thus, fully resolving the "right to possession," terminating the unlawful detainer action, and opening the option of converting the unlawful detainer proceeding into an ordinary civil action for damages to consider Maged's counterclaims.

additional orders, rulings, and factual determinations while the case remained an unlawful detainer action. We reiterate, "[i]n an unlawful detainer action, the court sits as a special statutory tribunal to summarily decide the issues authorized by statute and *not* as a court of general jurisdiction with the power to hear and determine other issues." *Granat*, 99 Wn.2d at 571. Accordingly, we vacate (1) part four of the trial court's August 15, 2008 order, concluding the "issue of legal possession to the [property] is not yet resolved";[62] and (2) all of the trial court's orders, rulings, and factual determinations entered after August 15, including, but not limited to, the trial court's summary judgment dismissal with prejudice of Maged's constructive eviction counterclaim, its final order and judgment in favor of Angelo, and its award to Angelo of attorney fees incurred after this date.[63]

## F. Invited Error Doctrine Not Applicable

¶52 Angelo argues that, to the extent the trial court erroneously ruled on a jurisdictional issue, we should excuse the error because Maged allegedly "invited" the error by filing his motion to amend his answer and to include counterclaims.[64] Br. of Resp't at 18. Maged responds that (1) he did not ask the trial court to hear his counterclaims under its unlawful detainer jurisdiction; (2) instead, he set forth the legal basis for the trial court first to "convert"[65] the unlawful detainer action into an ordinary civil action for damages and *then* to hear his counterclaims under the trial court's general subject matter jurisdiction; (3) he did

[62] CP at 102.

[63] See *infra* pp. 825-26, in the Attorney Fees section of this analysis.

[64] Angelo provides no argument to support its bald assertion that the invited error doctrine may excuse a trial court's error based on lack of subject matter jurisdiction. Because this bald assertion fails to comply with the RAP 10.3(a)-(b) requirements, we do not further consider it.

[65] Reply Br. of Appellant at 7.

not invite the trial court to " 'hybrid[ize]' "[66] its jurisdiction over unlawful detainer matters or to apply the wrong legal rule in determining which counterclaims it could hear under its statutory unlawful detainer jurisdiction; and (4) it was *Angelo* that persuaded the trial court that Maged was still asserting a "[legal] right to possession" and that the court needed to retain its unlawful detainer jurisdiction, even though Maged had clearly relinquished all possessory rights to property. Angelo's invited error argument fails.

¶53 The invited error doctrine " 'prohibit[s] a party from setting up an error at trial and then complaining of it on appeal.' " *City of Seattle v. Patu*, 147 Wn.2d 717, 720, 58 P.3d 273 (2002) (quoting *State v. Pam*, 101 Wn.2d 507, 511, 680 P.2d 762 (1984), *overruled on other grounds by State v. Olson*, 126 Wn.2d 315, 893 P.2d 629 (1995)). The invited error doctrine, however, does not apply to subject matter jurisdiction issues. As we earlier noted, Washington courts have long held that "[p]arties cannot *confer* subject matter jurisdiction on the court by agreement between themselves; a court either has subject matter jurisdiction or it does not." *In re Marriage of Furrow*, 115 Wn. App. at 667 (emphasis added). Angelo has cited no authority holding that that the invited error doctrine applies to a trial court's error in asserting jurisdiction that it does not have.[67]

---

[66] Reply Br. of Appellant at 6 (quoting V RP at 29).

[67] We acknowledge, however, Division One's recent explanation that article 4, section 6 of our state constitution grants the superior courts broad jurisdiction over real estate disputes, encompassing even a landlord's failure to follow chapter 59.12 RCW's statutory requirements for commencing an unlawful detainer action. *Hous. Auth. v. Bin*, 163 Wn. App. 367, 369, 373-376, 260 P.3d 900 (2011); *see also Tacoma Rescue Mission v. Stewart*, 155 Wn. App. 250, 254 n.9, 228 P.3d 1289 (2010).

Division One's broad interpretation of the superior court's retention of unlawful detainer jurisdiction in the above situation, however, does not squarely address the issue before us here: Unlike the procedurally noncompliant landlord in *Bin*, Angelo properly commenced its unlawful detainer action and invoked the trial court's statutory unlawful detainer jurisdiction under chapter 59.12 RCW, which, as we have already explained, is a jurisdiction limited in scope, at least at that point. Nor does *Bin* discuss a superior court's attempt to "hybridize" its unlawful

¶54 Angelo baldly asserts that Maged asked the trial court to consider his counterclaims after asserting unlawful detainer jurisdiction under chapter 59.12 RCW. This argument, however, mischaracterizes Maged's request, which was that the trial court first needed to convert the unlawful detainer action into an ordinary civil action under *Munden* and *then* it could hear his counterclaims. Accordingly, we hold that the invited error doctrine does not apply here.

## II. Remaining Assignments of Error

¶55 In addition to other errors subsumed in the arguments already addressed, Maged also assigns error to the following trial court actions after August 15, 2008: (1) striking Maged's supplemental affidavit in opposition to summary judgment, (2) denying Maged's motion for revision under CR 54(b), (3) striking Maged's affidavit in support of his motion for revision, (4) striking Maged's attorney's posthearing declaration, (5) entering a final order and judgment against Maged, and (6) several of the trial court's findings of fact and conclusions of law.

¶56 In vacating the trial court's summary judgment for Angelo and dismissal of Maged's counterclaim, we have already held that (1) the trial court lacked subject matter jurisdiction over Maged's constructive eviction counterclaim in the context of the unlawful detainer action; (2) the trial court erred in concluding that the "issue of legal possession to the [property was] not yet resolved"[68] as of August 15, 2008; (3) the trial court lost its statutory unlawful detainer authority over the limited property possession issue after August 15, when the trial court expressly restored to Angelo the right to possess the property, which Maged had unequivocally relinquished the month before; and (4) as such, the trial court lacked jurisdiction to issue

---

detainer and general civil action jurisdiction as the trial court attempted here. Accordingly, *Bin* does not apply to the issues before us in this case.

[68] CP at 102.

any further orders, rulings, and factual determinations after this date while purporting to retain unlawful detainer jurisdiction. For the same reasons, we vacate all of the trial court's post-August 15, 2008 orders, rulings, and factual determinations.

## III. ATTORNEY FEES

¶57 Maged assigns error to the trial court's award to Angelo of attorney fees incurred below after August 15, 2008, by which date he had clearly relinquished all possession of the property to Angelo and, thus, the trial court had lost jurisdiction to enter additional orders under chapter 59.12 RCW. We agree. For the reasons we have already stated in reversing the trial court's summary judgment order and other post-August 15, 2008 orders, rulings, and factual determinations, we also vacate the trial court's award to Angelo of attorney fees incurred after August 15, 2008.

¶58 Both Angelo and Maged request attorney fees on appeal. We award reasonable attorney fees if allowed by statute, rule, or contract, and if a party requests such fees in his opening brief. RAP 18.1(a); *Malted Mousse, Inc. v. Steinmetz*, 150 Wn.2d 518, 535, 79 P.3d 1154 (2003). Here, section 42 of the lease agreement entitles the prevailing party to reasonable attorney fees for any action or proceeding under the lease. Angelo's unlawful detainer action and Maged's constructive eviction claim stem from the parties' obligations under their lease. Therefore, because Maged prevails on appeal, we award him attorney fees and costs on appeal under RAP 18.1, and we deny Angelo's request.

¶59 We vacate part four of the trial court's August 15, 2008 order, the trial court's summary judgment for Angelo, and all of the trial court's other post-August 15, 2008 orders, rulings, and factual determinations, including its grant of attorney fees to Angelo incurred after August 15, 2008. We reinstate Maged's constructive eviction counter-

claim and remand to the trial court for further proceedings. We also grant Maged attorney fees on appeal in an amount to be determined by our court commissioner upon Maged's compliance with RAP 18.1(d).

ARMSTRONG and QUINN-BRINTNALL, JJ., concur.

Review denied at 175 Wn.2d 1012 (2012).